1  John W. Lucas (CA Bar No. 271038)
   Jason H. Rosell (CA Bar No. 269126)
2  Pachulski Stang Ziehl & Jones LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111-4500
   Telephone:  415.263.7000
4  Facsimile:  415.263.7010
   Email:      jlucas@pszjlaw.com
5              jrosell@pszjlaw.com

6  Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| In re: | Case No. 18-31087 (HLB) |
|---|---|
| SEDGWICK, LLP, | Chapter 11 |
| Debtor. | **MOTION FOR ORDER APPROVING THE COMPROMISE OF A CONTROVERSY AMONG THE DEBTOR AND ONE BISCAYNE TOWER, LLC** |

Sedgwick, LLP, the above-captioned debtor and debtor-in-possession (the "Debtor"), submits this motion (the "Motion"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of a compromise between the Debtor and One Biscayne Tower, LLC (the "Landlord") relating to (a) the resolution of the Debtor's asserted preference claims against Landlord and (b) the stipulation of the Landlord's allowed unsecured claim against the Debtor, as set forth more fully in the *Settlement Agreement and Mutual Release* attached hereto as Exhibit A (the "Settlement Agreement").

This Motion is based on the following memorandum of points and authorities, the declaration of Gregory C. Read filed concurrently herewith (the "Read Declaration"), and any other evidence properly before the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Pursuant to the Motion, the Debtor seeks the entry of an order approving the terms and conditions of a compromise among the Debtor and the Landlord under Bankruptcy Rule 9019(a). The compromise among the parties is documented in the Settlement Agreement, which will become effective upon approval of the relief requested herein.

As set forth below, within ninety days prior to the Petition Date, the Landlord obtained a writ of garnishment that caused the Debtor's bank to segregate nearly $280,000 on account of the Landlord's judgment arising from the termination of a former office lease. It's the Debtor's view that the issuance of the writ and segregation of the cash was a preference. However, Landlord believes that it has defenses, including a statutory lien on the funds under Florida law. Instead of litigating the preference claim, the Debtor and Landlord have agreed to resolve the dispute as set forth herein.

Under the terms of the Settlement Agreement, the proposed settlement provides for the prompt return of $279,476.32 to the Debtor's estate in exchange for (a) a settlement payment of $15,000, (b) an allowed general unsecured claim in the amount of $126,796.64 and (c) mutual release of claims by the parties arising from the prepetition termination of the Debtor's leased office in Miami, Florida. The resolution of the preference claim and the underlying claim of the Landlord will avoid unnecessary and protracted litigation, augment assets of the estate, and liquidate a prepetition claim for liability the Debtor does not dispute. Accordingly, the Debtor respectfully submits that the Settlement Agreement is in the best interest of the estate and should be approved.

## II.

## STATEMENT OF FACTS

**A.** **General Background**

On October 2, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

On October 14, 2018, the Office of the United States Trustee appointed the following unsecured creditors to be members of the official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code: (a) BMO Harris Bank, (b) CPF 801 Tower LLC, and (c) One North Wacker Drive LLC.

**B.     The Lease Agreement and Stipulated Judgment**

The Debtor entered into a *Lease Agreement* dated August 20, 2013 (as amended, the "Lease Agreement") with the Landlord for office space located at Two South Biscayne Boulevard, Miami, Florida (the "Leased Premises"). The Debtor used the Leased Premises to operate its Miami office, which was one among thirteen offices in the United States at the time.

Pursuant to its terms, the Lease Agreement expired in 2024. However, in December 2017, the Debtor and the Landlord entered into an agreement (the "Termination Agreement") that terminated the Lease Agreement. Pursuant to the Termination Agreement, the Debtor vacated the Leased Premises on or about December 31, 2017.

The Termination Agreement provides that the Debtor shall pay the Landlord a total of $214,785.00 as follows: (a) $75,000 in connection with the execution of the Termination Agreement and (b) a total of $139,785.00 to be made in four equal installments. Pursuant to the Termination Agreement, the Debtor agreed to enter into a stipulated judgment in the event it breached the terms of the Termination Agreement.

The Debtor tendered the initial $75,000 payment but did not tender any other payments as required pursuant to the terms of the Termination Agreement. Accordingly, on June 29, 2018, the Circuit Court of the Eleventh Judicial Circuit in and form Miami-Dade County, Florida (the "State Court") entered a stipulated final judgment against the Debtor in the amount of $139,738.16 (the "Stipulated Judgment"). On September 18, 2018, the State Court entered a writ of garnishment (the "Writ") in the amount of the Stipulated Judgment.

Subsequently, the Landlord served the Writ on Citibank, N.A. ("Citibank"), the bank where the Debtor's bank accounts were located. In response to the Writ, Citibank transferred $279,476.32 (the "Transfer") from the Debtor's bank accounts to a segregated account (the "Segregated Account").

Pursuant to the Writ, the Debtor had until October 8, 2018 to respond to the Writ or an entry of a judgment against the Debtor could be entered in the amount of the Stipulated Judgment. Rather than respond to the Writ and incur the associated risks, the Debtor commenced its chapter 11 bankruptcy case on the Petition Date.

### C. The Dispute

The Debtor asserts that the Transfer was made within 90 days prior to the Petition Date, while the Debtor was insolvent, for the benefit of the Landlord (a creditor), on account of an antecedent debt, and that such transfer would enable Landlord to receive more than it would in the context of a chapter 7 liquidation had the transfer not been made. Accordingly, the Debtor contends that the Transfer may be avoided as a preferential transfer under section 547 of the Bankruptcy Code. The Landlord disputes this contention and asserts that there are defenses available under applicable Florida law, which include that the Writ gave rise to a statutory lien that may not be avoided under section 547(c)(6) of the Bankruptcy Code.

### D. The Settlement Agreement

The Debtor and Landlord have decided to settle the controversy between them to avoid the cost, inconvenience, delays, and uncertainties involved in further legal proceedings. The compromise reached between the parties is documented in the Settlement Agreement. As set forth more fully in the Settlement Agreement, the Debtor and the Landlord have agreed to, among other things, the following: (a) Landlord will file a Notice of Dissolution regarding the Writ within 7 days after entry of an order approving the Settlement Agreement; (b) Landlord then will request Citibank to transfer all funds in the Segregated Account (approx. $279,476.32) to the Debtor; (c) the Debtor will pay the Landlord $15,000 after receipt of the funds in the Segregated Account; (d) Landlord will amend its proofs of claim so that it reflects $126,796.64; and (e) the release of claims pursuant to paragraph 5 of the Settlement Agreement which states as follows:

> Mutual Release. Upon the Effective Date, the Parties, on behalf of themselves, and to the extent applicable, each of their estates, affiliates, predecessors, successors, assigns, officers, directors, employees, shareholders, lenders, agents, attorneys, and insurers, past, present, and future, release each other and each other's estates, affiliates, predecessors, successors, assigns, officers, directors, employees, shareholders, lenders,

4

agents, attorneys and insurers, past, present and future, from any and all actions, complaints, causes of action, claims (whether they be unsecured, secured, priority, and/or administrative), promises, obligations, losses, demands, damages, expenses, fees, attorney's fees or costs and any and all liabilities that the Parties have, had, or may have in the future against any such party, that arise from or relate in any way to the agreements among the Debtor and Landlord, except that such releases shall not release any party from any Party's obligations under this Settlement Agreement or prevent Landlord from filing a proof of claim in the Bankruptcy Court for the difference between the Stipulated Judgment amount and the amount of the Settlement Payment and receiving a distribution on that proof of claim.

### E. The Settlement Agreement Was Entered Into in Good Faith

As set forth in the Read Declaration, Mr. Read believes that the Settlement Agreement was entered into in good faith and represents a fair bargain for the Debtor's estate as well as its general unsecured creditors.

First, the Settlement Agreement will avoid unnecessary and protracted litigation involving Florida law. Second, the Settlement Agreement provides the net return of approximately $265,000 to the Debtor's estate. The expeditious resolution of the parties' claims and the prompt return of material funds to the Debtor's estate greatly outweigh the *de minimis* payment to the Landlord.

For all the foregoing reasons, the Debtor supports the Settlement Agreement and asks that the Court approve the compromise embodied therein.

## III.

## ARGUMENT

### A. Standard for Approval of Compromise Under Bankruptcy Rule 9019

Bankruptcy Rule 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In reviewing proposed settlements, the standard that courts applied under the former Bankruptcy Act also applies under the Bankruptcy Code. *See In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985). The U.S. Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414 (1968), that in order to approve a proposed settlement under the Bankruptcy Act, a court must have found that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . .

litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Carla Leather*, 44 B.R. at 466.

A court, however, should not substitute its own judgment for the judgment of a trustee or a debtor. *Id*. at 465. In reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983). "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." *In re Schmitt*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) (citations omitted).

The Ninth Circuit has held that in considering a proposed compromise, the Court must evaluate the following factors: (i) the probability of success; (ii) the difficulties, if any, of collection; (iii) the complexity of litigation involved, and the expense, inconvenience and delay in necessarily attending to it; and (iv) the paramount interests of creditors. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom*).

Many issues arise in evaluating whether a settlement is appropriate, including bankruptcy issues, collectability issues, and whether better alternatives exist. Those issues are discussed below.

### B. The Probability of Success Factor Favors a Compromise

Although the Debtor is confident in its position that the Transfer is an avoidable preference, the Landlord has raised various novel defenses under Florida law that, if litigated, would require the Debtor to expend resources defeating. The Debtor is also aware that there is always an inherent risk in litigation. In the instant case, such risk outweighs the benefit of resolving the Landlord's defenses without any detriment to the general unsecured creditors or the Debtor's estate. Accordingly, the Debtor submits that the first element of the traditional test under *A & C Properties* supports approval of the compromise reflected in the Settlement Agreement.

6

### C. The Difficulties of Collection are Immaterial

The Debtor acknowledges that there would be minimal difficulty of collection if the Debtor is the prevailing party because the funds at issue reside in a segregated account maintained by a neutral third party - Citibank. However, the Debtor would be required expend estate resources prosecuting its claims against the Landlord, which would effectively reduce the amount recovered from the Landlord.

### D. The Expense, Inconvenience, and Delay of Further Litigation

The third prong of the test under *A & C Properties* is the complexity of litigation involved, and the expense, inconvenience, and delay in attending to it. As discussed above regarding the probability of success, although the Debtor is confident in its position, the consummation of the Settlement Agreement will avoid the expense of litigation, including the cost to prepare briefs, attend hearings, and enforce a judgment – likely far outweighing the proposed $15,000 payment to the Landlord. It is important to note that the parties have only incurred minimal expense to date in relation to the dispute. For the foregoing reasons, the Debtor submits that the third prong under *A & C Properties* favors approval of the Settlement Agreement.

### E. The Settlement Agreement Serves the Interests of Creditors

Finally, as outlined in the Read Declaration and explained above, the Debtor believes that the deal embodied in the Settlement Agreement serves the interests of creditors. As discussed above, the Settlement Agreement will avoid unnecessary and potentially protracted litigation, reduce the potential pool of general unsecured claims, and guarantees a net return of approximately $265,000 to the Debtor's estate. Accordingly, the Settlement Agreement is in the best interests of the Debtor's estate and its creditors.

*[Remainder of page intentionally left blank]*

# IV.

# CONCLUSION

For the foregoing reasons, the Debtor requests that the Court approve the Settlement Agreement. A proposed form of order is attached hereto as Exhibit B.

Dated: February 4, 2019  PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Jason H. Rosell*
    Jason H. Rosell

Attorneys for the Debtor

# **EXHIBIT A**

**Settlement Agreement**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Settlement Agreement") dated as of January 30, 2019, is made and entered into by and between Sedgwick LLP (the "Debtor") and One Biscayne Tower, LLC ("Landlord" and, together with the Debtor, the "Parties").

## RECITALS

### A.     The Bankruptcy Case

1.     On October 2, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

2.     On October 14, 2018, the Office of the United States Trustee appointed the following unsecured creditors to be members of the official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code: (a) BMO Harris Bank, (b) CPF 801 Tower LLC, and (c) One North Wacker Drive LLC.

### B.     The Lease Agreement and Stipulated Judgment

3.     The Debtor entered into a *Lease Agreement* dated August 20, 2013 (as amended, the "Lease Agreement") with the Landlord for approximately 13,742 square feet of office space, commonly known as Suite 1500, located at Two South Biscayne Boulevard, Miami, Florida (the "Leased Premises"). The Debtor used the Leased Premises to operate its Miami office, which was one among thirteen offices in the United States at the time.

4.     Pursuant to its terms, the Lease Agreement expired in 2024. However, in December 2017, the Debtor and the Landlord entered into an agreement (the "Termination Agreement") that terminated the Lease Agreement. Pursuant to the Termination Agreement, the Debtor vacated the Leased Premises on or about December 31, 2017.

5. The Termination Agreement provides that the Debtor shall pay the Landlord a total of $214,785.00 as follows: (a) $75,000 in connection with the execution of the Termination Agreement and (b) a sum total of $139,785.00 to be made in four equal installments. The Termination Agreement also permitted Landlord to draw (in full) against a Letter of Credit issued by Citibank, N.A., in the amount of $150,016.84. Pursuant to the Termination Agreement, the Debtor agreed to enter into a stipulated judgment in the event it breached the terms of the Termination Agreement.

6. The Debtor tendered the initial $75,000 payment, but did not tender any other payments as required pursuant to the terms of the Termination Agreement. Accordingly, Landlord drew (in full) against the Letter of Credit, and on June 29, 2018, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") entered a stipulated final judgment against the Debtor and in favor of Landlord in the amount of $139,738.16 (the "Stipulated Judgment"). On September 18, 2018, the Clerk of the State Court issued a writ of garnishment (the "Writ") in the amount of the Stipulated Judgment.

7. Subsequently, the Landlord served the Writ on Citibank, N.A. ("Citibank"), the bank where the Debtor's bank accounts were located. In response to the Writ, Citibank transferred $279,476.32 (the "Transfer") from the Debtor's bank accounts to a segregated account (the "Segregated Account").

8. Pursuant to the Writ, the Debtor had until October 8, 2018 to respond to the Writ or an entry of a judgment against the Debtor could be entered in the amount of the Stipulated Judgment. The Debtor asserts that rather than respond to the Writ and incur the associated risks, the Debtor commenced its chapter 11 bankruptcy case on the Petition Date.

DOCS_LA:318568.7  Case: 18-31087   Doc# 147   Filed: 02/04/19   Entered: 02/04/19 15:16:26   Page 11 of 20

### C. The Dispute

9. The Debtor asserts that the Transfer was made within 90 days prior to the Petition Date, while the Debtor was insolvent, for the benefit of the Landlord (a creditor), on account of an antecedent debt, and that such transfer would enable Landlord to receive more than it would in the context of a chapter 7 liquidation had the transfer not been made. Accordingly, the Debtor contends that the Transfer may be avoided as a preferential transfer under section 547 of the Bankruptcy Code. The Landlord disputes this contention and asserts that there are defenses available under applicable Florida law, including its claim of holding a pre-petition statutory lien in the Transfer.

10. The Parties have decided to settle the controversy between them in order to avoid the cost, inconvenience, delays, and uncertainties involved in further legal proceedings.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, including the mutual promises and covenants contained herein, it is agreed as follows:

1. <u>Effective Date</u>. This Settlement Agreement shall become effective upon the entry of a final order by the Bankruptcy Court approving this Settlement Agreement (the "<u>Effective Date</u>").

2. <u>Landlord's Action to Vacate Writ</u>. Within seven (7) days of the Effective Date, Landlord shall, at its sole expense, file a Notice of Dissolution of the Writ. Upon dissolution of the Writ, Landlord shall notify Citibank in writing that the Writ was dissolved and request that Citibank transfer the funds back to the Debtor's bank account located at Citibank.

3. <u>Payment to Landlord</u>. Within seven (7) days after Citibank returns the segregated funds to the Debtor, the Debtor shall transfer $15,000.00 to the Landlord by wire transfer or check as directed by the Landlord ("<u>Settlement Payment</u>").

4. <u>Stipulation as to Proof of Claim.</u> The Parties agree that Landlord shall have an allowed general unsecured claim in the final amount of $126,796.64 (the "<u>Allowed Unsecured Claim</u>"). The Landlord shall file an amended proof of claim reflecting the Allowed Unsecured Claim within three (3) days of the Effective Date.

5. <u>Mutual Release</u>. Upon the Effective Date, the Parties, on behalf of themselves, and to the extent applicable, each of their estates, affiliates, predecessors, successors, assigns, officers, directors, employees, shareholders, lenders, agents, attorneys, and insurers, past, present, and future, release each other and each other's estates, affiliates, predecessors, successors, assigns, officers, directors, employees, shareholders, lenders, agents, attorneys and insurers, past, present and future, from any and all actions, complaints, causes of action, claims (whether they be unsecured, secured, priority, and/or administrative), promises, obligations, losses, demands, damages, expenses, fees, attorney's fees or costs and any and all liabilities that the Parties have, had, or may have in the future against any such party, that arise from or relate in any way to the agreements among the Debtor and Landlord, except that such releases shall not release any party from any Party's obligations under this Stipulation or prevent Landlord from filing a proof of claim in the Bankruptcy Court for the difference between the Stipulated Judgment amount and the amount of the Settlement Payment and receiving a distribution on that proof of claim.

6. <u>Waiver of Section 1542</u>. The Parties recognize, acknowledge, and waive the provisions of California Civil Code Section 1542, which provides:

4

Case: 18-31087   Doc# 147   Filed: 02/04/19   Entered: 02/04/19 15:16:26   Page 13 of 20
DOCS_LA:319856.7

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.**

In waiving the provisions of Section 1542 of the California Civil Code, each Party acknowledges that it may discover facts in addition to or different than those which it now believes to be true with respect to the matters released in this Settlement Agreement, but agree that it has taken that possibility into account in reaching this settlement, and the releases given in this Settlement Agreement shall remain in effect as a full and complete release notwithstanding the discovery or existence of such additional or different facts, as to which each Party expressly assumes the risk.

7. <u>Bankruptcy Court Approval</u>. This Settlement Agreement is subject to Bankruptcy Court approval. The Debtor shall take all action necessary to obtain Bankruptcy Court approval, including but not limited to, any additional notice or filings required by the Bankruptcy Code or the Bankruptcy Court.

8. <u>Attorneys' Fees</u>. Each Party shall be responsible for its respective costs and expenses (including, without limitation, attorneys' fees) incurred by it in negotiating, drafting and executing this Settlement Agreement and shall not be responsible for the payment of any such fees or costs incurred by any other party hereto.

9. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon (a) the Debtor and any trustee or examiner that may be appointed in its chapter 11 case, or their respective successors and assigns; (b) the Landlord, its successors and assigns; (c) the trustee in the event that this case is converted to one under chapter 7 of the Bankruptcy Code; and (d) the Committee, all creditors, and other parties in interest in the Debtor's chapter 11 case.

5

10. <u>Authorizations</u>. Each Party represents and warrants to each other Party that it is authorized to execute this Settlement Agreement, that it has full power and authority to enter into this Settlement Agreement and effectuate the matters provided hereunder and that this Settlement Agreement is duly executed and delivered by it and constitutes its valid, binding Settlement Agreement in accordance with its terms. The Landlord further represents that it has not transferred any claim (or any portion thereof) that is the subject of this Settlement Agreement.

11. <u>Entire Agreement</u>. This Settlement Agreement contains the entire agreement among the Parties relating to the subject matter hereof and can be amended or otherwise modified only by a signed writing executed by the Parties.

12. <u>Counterparts</u>. This Settlement Agreement may be executed in multiple counterparts, any of which may be transmitted by electronic (e-mail) transmission, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copy signed by the Parties hereto to be charged.

13. <u>Governing Law</u>. This Stipulation shall be governed by the laws of the State of Florida and the Bankruptcy Code.

14. <u>Jurisdiction</u>. The Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Settlement Agreement.

*[Remainder of page intentionally left blank]*

**ACCEPTED AND AGREED TO BY:**

                    **ONE BISCAYNE TOWER, LLC**

By: *[signature: Corinne Hoffman]*
Name:
Title:          *Corinne Hoffman*
              *Vice President*

                    **SEDGWICK LLP**

By: _____
Name:     Gregory C. Read
Title:      Member of Dissolution Committee

7

DOCS_SF:98568.7

Case: 18-31087    Doc# 147    Filed: 02/04/19    Entered: 02/04/19 15:16:26    Page 16 of 20

**ACCEPTED AND AGREED TO BY:**

        **ONE BISCAYNE TOWER, LLC**

        By: _____
        Name:
        Title:

        **SEDGWICK LLP**

        By: _/s/ Gregory C. Read_____
        Name:    Gregory C. Read
        Title:    Member of Dissolution Committee

# EXHIBIT B

**Proposed Order**

1  John W. Lucas (CA Bar No. 271038)
   Jason H. Rosell (CA Bar No. 269126)
2  Pachulski Stang Ziehl & Jones LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111-4500
   Telephone:  415.263.7000
4  Facsimile:  415.263.7010
   Email:      jlucas@pszjlaw.com
5              jrosell@pszjlaw.com

6  Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>SEDGWICK, LLP,<br><br>Debtor. | Case No.: 18-31087 (HLB)<br><br>Chapter 11<br><br>**ORDER APPROVING THE COMPROMISE OF A CONTROVERSY AMONG THE DEBTOR AND ONE BISCAYNE TOWER, LLC** |

This matter came before the Court on the *Motion for Order Approving the Compromise of a Controversy Among the Debtor and One Biscayne Tower, LLC* (the "Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor"). The Court having reviewed the Motion and the declaration of Gregory C. Read filed in support thereof and finding that notice of the Motion was reasonable and appropriate under the circumstances, that the relief requested in the Motion is in the best interest of the Debtor's estate and its creditors; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED**.

2. The Settlement Agreement is approved and incorporated into this Order and the Debtor, Landlord, and Citibank are authorized to take any and all actions as may be necessary to implement the terms of the Settlement Agreement.

3. This Court shall retain jurisdiction over all matters arising from or related to the Settlement Agreement or the implementation of this Order.

**\*\*END OF ORDER\*\***