Stephen D. Finestone (125675)
Jennifer C. Hayes, (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel. (415) 616-0466
Fax (415) 398-2820
Email:      sfinestone@fhlawllp.com
Email:      jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Douglas E. Wance

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | CASE NO. 18-31087 (HLB) |
| **SEDGWICK, LLP,** | Chapter 11 |
| Debtor. | **DECLARATION OF SANDOR T. BOXER** |
| | Date:     March 21, 2019<br>Time:    10:00 a.m.<br>Place:    United States Bankruptcy Court<br>         450 Golden Gate Avenue<br>         16th Floor<br>         Courtroom 19<br>         San Francisco, California 94102 |
| | Judge:  Hon. Hannah L. Blumenstiel |

I, Sandor T. Boxer, declare as follows:

1.     I am an attorney at law, duly authorized and licensed to practice law in the state of California and before this Court and I had the responsibility to timely file the proof of claim of Douglas E. Wance ("Wance") before this Court.

2.     I have personal knowledge of all of the facts set forth in this Declaration and if were called as a witness I would, and could, testify competently as to these facts.

3.     I have practiced law since 1965 with a significant part of my practice since 1966 devoted to the representation of creditors before the Bankruptcy courts. As such, I am familiar with the rules as to the deadlines for the filing of claims in the various types of Bankruptcy proceedings and the consequences of not timely filing a Proof of Claim.

4.     In 1991 I opened my office as a sole practitioner and have continued to practice as such since that time.  In September 2018 I moved my office home and continue practicing on a semi-retired basis.

5.     Because of my concerns about the need to timely comply with deadlines, such as the filing of a Proof of Claim, in 1991 I put together a system of calendaring within my office.  That system consists of two separate computer programs, into which I (and my assistant when I had one), inputted the various deadline dates, including reminders sufficiently ahead of the deadline to allow for timely compliance.  Once that data is inputted, the respective computer programs are generally checked on a daily basis to spot impending deadlines.

6.     The lynch pins of the systems I was (and am) using is the timely entry of the data as to the pending deadlines.  In essence, once the deadlines and their reminders are entered, I receive a flow of timely information as the need to take action.  Concomitantly, if the data is not entered into the systems (as is the case with respect to this matter), I thereafter receive no information as to the pending deadlines.

7.     In late November of 2018 I was contacted by Paul Chan ("Chan"), trial counsel for Wance, regarding the filing of a Proof of Claim on behalf of Wance in this Chapter 11 proceeding.

8.     Although Wance was not listed as a creditor and had not received the Clerk's notice, I reviewed the relevant documents and, by the end of November, determined the deadline for the filing of the Proof of Claim.

9.     However, due to the press of other matters and my own inadvertence and mistake, I did not then follow my customary practice and input the data into my calendaring system as to the deadline for the filing of a Proof of Claim, along with the reminders to take action.  Nor did I subsequently have any independent memory of the deadline.

10.     On January 28, 2019 I sat down at my computer to prepare the Proof of Claim.  At that point time, I had no memory that the deadline was January 22, 2019 or that the deadline had, in fact, been set.

11.     I began by checking the docket to see whether the Court had set a Bar Date.  I was initially surprised on January 28, 2019 to learn that the Bar Date had been included in the Notice sent out by the Clerk at the outset of the filing of the case and that the deadline had passed.  On further investigation I ascertained that the source of my error was my failure to input the necessary data into the calendaring systems when I first ascertained it in late November.

12.     Upon learning of my error, I immediately took the steps to put together a Proof of Claim, including consultations with my client as well as my client's state court counsel.

13.     On January 31, 2019 I caused to be filed my client's claim as Claim number 77.  A true and correct copy of the claim is attached hereto as Exhibit 1.

/ / /

/ / /

/ / /

DECLARATION OF SANDOR T. BOXER

1    I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3        Executed February 13, 2019, at Woodland Hills, California.

4

5                                    *Sandor T. Boxer*
                                     Sandor T. Boxer
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3551J17J

DECLARATION OF SANDOR T. BOXER

EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1    Sedgwick LLP

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Northern District of California**

Case number:  18−31087

FILED

**U.S. Bankruptcy Court**
**Northern District of California**

1/31/2019

**Edward J. Emmons, Clerk**

## Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

| Part 1: | Identify the Claim |
|---------|--------------------|

**1. Who is the current creditor?**

Douglas E. Wance

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Douglas E. Wance

Name

Paul S. Chan, Esq.
Bird Marella
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067−2561

Contact phone    (310) 201−2100

Contact email    pchan@birdmarella.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)

Filed on

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

---

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|

| 7. How much is the claim? | $ unknown | **Does this amount include interest or other charges?**<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Per Attachment, claim seeks indemnification for a former employee of Debtor .

**9. Is all or part of the claim secured?**

☒ No<br>
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| Value of property: | $ |
|---|---|
| Amount of the claim that is secured: | $ |
| Amount of the claim that is unsecured: | $    (The sum of the secured and unsecured amounts should match the amount in line 7.) |

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed
☐ Variable

| 10. Is this claim based on a lease? | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|

| 11. Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |
|---|---|

Official Form 410                                    Proof of Claim                                    page 2

Case: 18-31087   Claim 157-1   Filed 02/21/19   Desc Main Document   Page 2 of 3   Page 7 of 21

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies

$ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date      1/31/2019

MM / DD / YYYY

/s/  Sandor T. Boxer

Signature

Print the name of the person who is completing and signing this claim:

Name      Sandor T. Boxer

First name      Middle name      Last name

Title      Attorney for Creditor

Company      Law office of Sandor T. Boxer

Identify the corporate servicer as the company if the authorized agent is a servicer

Address      5301 Orrville Avenue

Number   Street

Woodland Hills, CA 91367

City   State   ZIP Code

Contact phone      8187030634          Email      tedb@tedboxer.com

**In re Sedgwick LLP**

**Attachment to Proof of Claim of Douglas E. Wance**

**Part 2, item 7. How much is the claim?**

As set forth in the next section, this claim is based on the Claimant's right of indemnification for prospective liability to third parties arising from services provided to those parties by the Debtor and while the Claimant was an employee of the Debtor.

The Parties who brought suit against the Debtor and Claimant recently asserted that the damages asserted against Claimant, as of January 18, 2019, include

| Item | Amount |
|------|--------|
| Damage claim | $1,000,000 |
| interest on Damage claim from 6/29/10 - 1/18/19 | 599,200.06 |
| Multiplier per Cal. Govt. Code §12651(a) | 2,000,000 |
| Civil Penalties | 11,000 |
| **Total (excluding attorney's fees and costs of suit)** | **$3,610,200.06** |

In addition, Claimant is entitled to be indemnified for the expenses he has incurred and will incur in the future. Claimant estimates his legal fees to defend the claims are currently in the approximate amount of $625,000.

Attachment page 1

**Part 2, item 8.  What is the basis of the claim?**

The Claimant is an attorney who was formerly employed by the Debtor.  On August 16, 2013, a suit was filed against both Claimant and the Debtor in the Superior Court of Los Angeles County, case no. BC518653.  The suit seeks, among other relief, damages against Claimant arising from the services he performed while employed by Debtor.  Claimant, as an employee, is entitled to indemnification from his employer, the Debtor, for good faith actions taken by the employee in the course and scope of his employment.  Cal. Labor Code § 2802.

Trial of the underlying case is currently set for May 22, 2019.

A copy of the current operative pleading against Claimant, the First Amended Complaint, is included.

Attachment page 2

1   JIMMIE JOHNSON
   STATE BAR NO. 133252
2   3700 WILSHIRE BOULEVARD
   SUITE 900
3   LOS ANGELES, CA 90010
   (213)632-5300
4   ATTORNEYS FOR PLAINTIFFS

5

6

7          **SUPERIOR COURT OF CALIFORNIA**

8      **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

9

10 Central Basin Municipal Water     ) Case No. BC518653
   District, a Public Entity, ex rel. )
11 Leticia Vasquez, Qui Tam Plaintiff,) **FIRST AMENDED COMPLAINT**
                             ) **FOR DAMAGES AND DEMAND**
12                                ) **FOR JURY TRIAL**
                               )
13                Plaintiffs, ) 1) **VIOLATIONS OF THE**
                               )    **CALIFORNIA FALSE**
14 vs                              )    **CLAIMS ACT**
                               )    (Govt Code §12650 et seq.)
15 Sedgwick, Detert, Moran & Arnold, )
   LLP; Buchalter Nemer, a Prof. Law; )
16 Corp.; Douglas E. Wance; Curtis    ) 2) **CONSPIRACY TO VIOLATE**
   Parvin; Art Aguilar; & Does      )    **THE CALIFORNIA FALSE**
17 1 to 50,                          )    **CLAIMS ACT**
                               )    (Govt Code §12651(a)(3))
18              Defendants, )
                               ) Assigned to Honorable
19                                ) Susan Bryant-Deason
                               ) Department 52
20                                )
                               ) Action Filed: August 16, 2013
21                                ) Trial Date: None set
22 _____)

23                 **SUMMARY OF ACTION**

24 A.    This action is brought by Qui Tam Plaintiff Leticia Vasquez

25 (hereinafter referred to as "Vasquez" and/or "Board Member

26 Vasquez")in the name of the Central Basin Municipal Water

27 District (hereinafter referred to as "Central Basin"), a

28 California local Public Entity, pursuant to the California False

1 Claims Act (California Government code Section 12650 et seq.)
2 and, more particularly, California Government Code Section
3 12652(c)(1). The main office of the Central Basin is located in
4 Los Angeles County at 6252 Telegraph Road, Commerce, California.
5 Central Basin is a governmental agency authorized under Section
6 71000 of the California Water Code for the purpose of providing
7 an adequate supply of water within its service area.

8 B. On or about June 5, 2012, Vasquez ran for and was elected as a member of the governing
9 Board of the Central Basin representing Division 4. On or about January 6, 2013, Vasquez was
10 duly sworn in as a Board member of the Central Basin by United States Congresswoman Grace
11 Napolitano.

12 C. Within days after her swearing-in ceremony Board member Vasquez learned from non-media
13 and non-public sources that some millions of dollars of Central Basin funds were allegedly
14 secretly, improperly, illegally and without authority transferred from one or more Central Basin
15 bank accounts to one or more bank accounts exclusively owned, controlled and managed by
16 Defendants Sedgwick, Deter, Moran & Arnold, LLP (hereinafter referred to as "Sedgwick") and
17 Buchalter Nemer (hereinafter referred to as "Buchalter"), a Professional Law Corporation. As a
18 result of Vasquez making various formal and informal inquiries she came to learn that no less
19 than $2,750,000 in Central Basin funds had been transferred to said law firms without any legal
20 authority and without any benefit to the Central Basin. The $2,750,000 has been referred to by
21 Central Basin Board Member Art Chacon as the "Slush Fund". Hereinafter Plaintiff shall from
22 time to time refer to these funds as the "Slush Fund". The funds sought to be recovered by this
23 action belong exclusively to the Central Basin, a political subdivision of the State of California.

24 D. Board member Vasquez learned and alleges herein that monies to establish the Slush Fund
25 were transferred from the Central Basin and the Slush Fund was created 1) in blatant disregard of
26 and in violation the Brown Act, and 2) in blatant disregard of and in violation of the California
27 False Claims Act (Government Code Section 12650 et seq.). The Slush Fund was created and
28 kept secret by Defendants Douglas Eugene Wance (hereinafter "Wance") and Curtis Parvin

1 (hereinafter "Parvin"), attorneys who served as the General Counsel and principal legal advisors

2 for the Central Basin, Art Aguilar (hereinafter "Aguilar"), former General Manager of the Central

3 Basin, and one or more present or former Central Basin high ranking administrative staff who are

4 designated herein as Doe Defendants 1 through 30 by various methods and means of false claims,

5 fraud, use of false records and false statements, ruse, trickery, omissions, deceit, cunning,

6 deception, theft, willful and deliberate ignorance of the truth, willful disregard of the truth,

7 conspiracy and other presently unknown devices and artifices.

8 E. Wance and Parvin, acting as agents, employees and/or representatives of Sedgwick and

9 Buchalter law firms with the assistance of Aguilar and Defendant Does 1 through 30 and

10 Sedgwick and Buchalter conspired and agreed to conceal the theft and transfer of the subject

11 funds from the public and from law enforcement authorities by among others, the following

12 methods: 1) multiple violations of the Brown Act by failing and refusing to properly disclose said

13 transfers and transactions on the Central Basin's public disclosures of its expenditures; 2)

14 multiple violations of the Brown Act by failing and refusing to request or secure the vote of the

15 Central Basin Governing board for said transfers and transactions; 3) multiple violations of the

16 Brown Act by failing to disclose said transfers and transactions in any public meeting or forum of

17 the Central Basin; 4) failing and refusing to have said transfers and transactions properly

18 recorded in the meeting minutes of the Central Basin; 5) failing and refusing to secure Central

19 Basin Governing Board resolutions or other authorizing documents approving or permitting said

20 transfers and transactions; 6) failing and refusing to prepare and/or secure any written agreement

21 or other written document authorizing said transfers and transactions or otherwise describing the

22 purpose and use of said transfers and transactions; 7) using secret wire transfers to effect the

23 transfer of the funds and failing and refusing to disclose the transfers on the public warrant runs

24 normally used for the transfer of Central Basin funds; 8) failing and refusing to cooperate with

25 members of the public and other Central Basin Board Members when reasonable inquiries were

26 made about the existence of the Slush Fund; 9) initiating a sham investigation of the Slush Fund

27 in an attempt to cover up and otherwise conceal and prevent public disclosure of the Slush Fund;

28 10) failing and refusing to secure Central Basin Governing Board resolutions or other authorizing

1    documents approving or permitting contracts on behalf of the Central Basin when the law

2    required such approval; 11) waiving the Central Basin's legal rights to challenge conflicts of

3    interest and to demand loyalty from its attorneys, and 12) threatening, harassing and otherwise

4    attempting to intimidate Board member Vasquez when she made inquiries and sought

5    information about the origin, nature, control and use of the Slush Fund. Board member Vasquez

6    is uncertain of exactly how the Slush Fund was expended, but is informed and believes, and

7    thereon alleges, that said funds were used to unjustly enrich Defendants Wance, Parvin,

8    Sedgwick, Buchalter and Does 1 through 30 and said Defendants' friends, relatives, affiliates,

9    associates, and/or political allies or for other unlawful and unauthorized purposes.

10    F. Board Member Vasquez is an original source of the information about the illegal and

11    unauthorized transfer of the $2,750,000 in Central Basin funds to the two law firms as that term

12    is used in Government Code §12652(d)(3)(B) and [C]. Board Member Vasquez has, in good

13    faith, exhausted the existing internal procedures at the Central Basin for reporting and seeking

14    recovery of the illegal and unauthorized transfer of the $2,750,000 to the two law firms. The

15    Central Basin has failed and refused to take any action to recover the funds within a reasonable

16    period of time. By this action Board member Vasquez seeks to recover 1) the Slush Fund on

17    behalf of the Central Basin pursuant to the California False Claims Act; 2) three times the

18    amount of damages as authorized by Government Code §12651(a); 3) civil penalties; 4)

19    reasonable costs and expenses; 5) attorney's fees, and 6) such other sums as authorized by law,

20    including any appropriate percentage recoveries for her as a Qui Tam Plaintiff.

21    **FIRST CAUSE OF ACTION AGAINST SEDGWICK, DETERT, MORAN &**

22    **ARNOLD LLP, DOUGLAS EUGENE WANCE, CURTIS PARVIN AND DOES 1 TO 20**

23    **VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT**

24    **(Govt. Code §12651(a))**

25    1. Plaintiff hereby realleges and incorporates herein by this reference each and every allegation

26    contained in paragraphs A through F of the Summary of Action of this Complaint.

27    2. Plaintiff is informed and believes and thereon alleges that defendant Sedgwick is a

28    professional law partnership conducting the practice of law in, among other places, the City and

1 │ County of Los Angeles, California and has offices located at 801 South Figueroa Street, 19th
2 │ Floor, Los Angeles, California.

3 │ 3.  At all pertinent times alleged herein plaintiff is informed and believes, and thereon alleges,
4 │ that defendant Wance was a licensed California attorney at law working as a partner, employee,
5 │ agent and/or authorized representative for defendant Sedgwick.  At all pertinent times alleged
6 │ herein plaintiff is informed and believes, and thereon alleges that defendant Parvin was a licensed
7 │ California attorney at law working as a partner, employee, agent and/or authorized representative
8 │ for defendant Sedgwick.  At all pertinent times alleged herein defendants Wance and Parvin were
9 │ acting within the course and scope of their partnership, employment, agency or representation for
10 │ and on behalf of defendant Sedgwick and with Sedgwick's full prior knowledge and consent.

11 │ 4.  Sometime prior to June 2010 the Central Basin Governing Board retained Sedgwick to
12 │ provide legal services to the Central Basin.  As part of that retention of services, Wance was
13 │ designated by Sedgwick and the Central Basin as the principal attorney and primary contact
14 │ person and General Counsel from Sedgwick for the Central Basin.  Parvin, in conjunction with
15 │ Wance, was also designated by Sedgwick to provide legal services and advice to the Central
16 │ Basin.

17 │ 5.  While serving as General Counsel from Sedgwick Wance and Parvin, among other things,
18 │ regularly prepared and assisted in the preparation of the public meeting agendas and closed
19 │ session entries for the public meeting agendas for the Central Basin, attended Central Basin
20 │ public meetings, gave general and specific legal advice to the Central Basin employees and staff
21 │ especially with respect to the preparation of the Central Basin agenda, minutes of the Central
22 │ Basin meetings and resolutions for the Governing Board of the Central Basin, represented the
23 │ Central Basin in various litigation matters, attended Central Basin closed session meetings with
24 │ the Governing Board and gave legal advice during said closed sessions, prepared documentation
25 │ on behalf of the Central Basin and generally functioned as the Central Basin's principal attorneys
26 │ and General Counsel and principal legal advisors.  The Central Basin staff and Governing Board
27 │ reasonably in good faith relied on and trusted Wance's and Parvin's legal advice and guidance
28 │ with respect to the preparation and contents of its agendas, minutes of meetings and resolutions

1    of actions taken by the Governing Board.

2    6. Plaintiff is unaware of the true names and capacities of Defendants 1 to 30 and therefore sues

3    said Doe Defendants using their fictitious identities. When plaintiff ascertains the true names

4    and capacities of said Doe Defendants plaintiff will so inform the court and will seek leave to

5    amend the complaint to state said true names and capacities. Plaintiff is informed and believes

6    that said Doe Defendants 1 to 30, and each of them, are agents, employees, or otherwise

7    representatives of defendants Sedgwick, Buchalter and/or the Central Basin. Plaintiff is

8    informed and believes that said Doe Defendants 1 to 30, and each of them, are in some manner

9    responsible for the wrongful conduct and damages alleged by plaintiff herein.

10    7. Sometime shortly before June 28, 2010 Defendant Wance, while acting as the Central Basin

11    General Counsel, and/or Parvin also while serving as an attorney for the Central Basin, Aguilar

12    and Defendant Does 1 to 5 and each of them knowingly prepared, or under their direct

13    supervision and instruction knowingly caused to be prepared a false and erroneous closed session

14    agenda item for the Central Basin public meeting of June 28, 2010. The false and erroneous

15    closed session agenda item stated, "54956.9[c] Conference with Legal Counsel Anticipated

16    Litigation - 1 Item". Pursuant to the direction and instruction of Wance, Parvin, Aguilar and

17    Does 1 to 5, the agenda containing said false and erroneous closed session entry was published

18    and otherwise disseminated to the public as the official notice of said meeting pursuant to the

19    Brown Act. At the time of the preparation and dissemination of said agenda defendants Wance,

20    Parvin, Aguilar and Does 1 to 5 were aware of the false and erroneous closed session entry and

21    knowingly caused it to be published to the public. Specifically, Wance, Parvin, Aguilar and

22    Does 1 to 5 knew that the real intention and purpose of the closed session anticipated litigation

23    entry was to discuss ways and means to secretly transfer $1 million to the Sedgwick law firm for

24    unauthorized and undisclosed non-litigation purposes. Wance, Parvin, Aguilar and Does 1 to 5

25    used the anticipated litigation exception to the Brown Act as a pretext and ruse so they would not

26    have to publicly disclose their true intentions and purposes.

27    8. Wance, Parvin, Aguilar and Does 1 to 5, and each of them, used said false and erroneous

28    June 28, 2010 closed session agenda entry as a basis to discuss ground water storage that would

otherwise have to be publicly disclosed on the agenda. Wance, Parvin, Aguilar and Does 1 to 5 were aware that there was public opposition (that could defeat the $1,000,000 payment) to the Central Basin using its resources for ground water storage and therefore decided to conceal this intention by using the litigation exception to the Brown Act to avoid disclosure. Wance, Parvin, Aguilar and Does 1 to 5 knowingly used the false closed session entry as a legal pretext and ruse to secretly transfer $1 million from the Central Basin to a Sedgwick bank account without authorization from the Central Basin Governing Board and without disclosure of t he $1 million transfer to the public as required by law. The creation and use of said false closed session agenda entry was a "...false record or statement material to a false or fraudulent claim..." as those terms are used in the Government Code §12651(a)(2). The creation and use of said false closed session agenda entries formed the basis for said Defendants presentation of a false or fraudulent claim for payment or approval as those terms are in Government code §12651(a)(1). During the Central Basin closed session of June 28, 2010 Wance falsely advised the Central Basin Board that it was legal and proper to discuss and approve matters related to ground water storage under the description of "anticipated litigation". Wance was well aware that his advice was false and that such discussions and approval were required to be publicly disclosed. Plaintiff is informed and believes that the Board reasonably believed and relied on Wance's false legal advice.

9. On June 28, 2010 after the Central Basin Governing Board closed session Defendants Wance, Parvin, Aguilar and Does 1 to 5 falsely and erroneously reported to the public that during the closed session the Governing Board approved an action to provide resources for "ongoing litigation" pursuant to and consistent with the false closed session entry listed on the agenda and Wance's false legal advice regarding the propriety of having such discussion in closed session.. As specified in more detail below, plaintiff is informed and believes and thereon alleges that Wance, Parvin, Aguilar and Does 1 to 5 used this false closed session report as a pretext, ruse and justification to unlawfully transfer $1 million of Central Basin monies as prepaid legal expenses to a Sedgwick bank account without authority or approval of the Central Basin Governing Board. The false and erroneous report from closed session regarding the "ongoing litigation" was a ",,,false record or statement material to a false or fraudulent claim..." as those

First Amended Complaint                                    Page -7-

Case 1:18-cv-31097   Doc # 151-1   Filed 02/04/19   Entered 02/04/19 09:37:40   Page 906 of 51
Case 1:18-cv-31097   Claim # 151-1 Part 1   Filed 01/15   Entered   Desc Attachment 1   Page 906 of 51
of 21

1  terms are used in Government Code §12651(a)(2). The creation and use of said false and
2  erroneous agenda entry and report from closed session formed the justification to give to Central
3  Basin employees the task of actually transferring $1,000,000 of Central Basin funds to a
4  Sedgwick bank account.
5  10. Shortly after the June 28, 2010 Central Basin meeting defendants Wance and Parvin while
6  acting as the Central Basin attorney, Aguilar and defendant Does 1 to 5 and each of them
7  knowingly prepared, or under their direct supervision and instruction knowingly caused to be
8  prepared, false and erroneous minutes for the Central Basin Agenda public meeting of June 28,
9  2010. Those minutes falsely stated that the Governing Board had instructed its General manager
10 to make resources available to Sedgwick for "ongoing litigation". The Governing Board
11 members have denied that there was a vote to provide resources for ongoing litigation. The false
12 and erroneous minutes of the June 28, 2010 meeting was a "...false record or statement material
13 to a false or fraudulent claim..." as those terms are used in Government Code §12651(a)(2). The
14 creation and use of said false and erroneous minutes formed the basis for said Defendants
15 presentation of a false or fraudulent claim for payment or approval as those terms are used in
16 Government Code §12651(a)(1).
17 11. On or about June 29, 2010 Wance, Parvin, while acting as attorneys for the Central Basin
18 and employees, agents and representatives of Sedgwick and with Sedgwick's full knowledge and
19 consent along with Aguilar and Does 1 to 5 caused $1 million of Central Basin funds to be
20 secretly paid by wire transfer to a Sedgwick law firm bank account without public disclosure in
21 direct violation of the law and without approval or authority of the Central Basin Governing
22 Board. Plaintiff is informed and believes that Wance, Parvin, Aguilar and Does 1 to 5 knowingly
23 created false documents and unauthorized contracts and records or other false written authorities
24 and presented the same to the Central Basin bank and knowingly falsely represented to the
25 Central Basin bank that the transfer of the $1 million to Sedgwick was authorized by the Central
26 Basin Governing Board. Plaintiff is informed and believes that Wance, Parvin, Aguilar and Does
27 1 to 5 falsely claimed that the Board voted in closed session on June 28, 2010 to authorize the
28 transfer of the $1 million to Sedgwick for ongoing litigation. Wance, Parvin, Aguilar and Does 1

1    to 5 intentionally used a secret wire transfer of funds instead of the normal Central Basin

2    procedure of publicly disclosing the expenditure of the money on the public warrant run pursuant

3    to the Brown Act. The creation and use of said false documents and unauthorized contracts and

4    records or other false written authorities to effect the secret transfer of the $1 million was a

5    "...false record or statement material to a false or fraudulent claim..." as those terms are used in

6    Government Code §12651(a)(2). The creation and use of said false documents and records or

7    other false written authorities formed the basis for said Defendants presentation of a false or

8    fraudulent claim for payment or approval as those terms are used in Government Code §

9    12651(a)(1).

10    12. At the time that Wance, Parvin, Aguilar and Does 1 to 5 were taking the actions hereinabove

11    described to secretly and without authority transfer $1 million of Central Basin funds to the

12    Sedgwick bank account, Sedgwick was fully aware of their actions and/or acted in deliberate

13    ignorance of the truth or with reckless disregard for the truth.

14    13. After the secret transfer of the $1 million from the Central Basin bank account to the

15    Sedgwick bank account on June 29, 2010, the $1 million remained unspent accruing interest in

16    the Sedgwick bank account for four months. During this four month period the $1 million was

17    not used in any way for the benefit of the Central Basin. Plaintiff is informed and believes, and

18    thereon alleges that the four months was a "no snitching" or "lookout" or "cooling off" period for

19    Defendants Wance, Parvin, Aguilar and Does 1 to 5 to ascertain whether or not their secret,

20    illegal and unauthorized transfer of $1 million in Central Basin funds to Sedgwick and the

21    creation of said Slush Fund would be detected or otherwise disclosed to the public or law

22    enforcement officials.

23    14. Plaintiff is informed and believes, and thereon alleges, that after the expiration of the "no

24    snitching"period on or about October, 2010 and continuing for the next several months

25    thereafter, Defendants Wance, Parvin, Aguilar, Sedgwick and Does 1 to 5 started spending the $

26    1 million in Central Basin funds that had been secretly transferred to the Sedgwick bank account.

27    Plaintiff is informed and believes that the $1 million dollars was improperly and illegally paid

28    without disclosure to or authorization from the Central Basin Governing Board to associates,

1    friends, political allies and other persons related to or otherwise associated with Defendants

2    Wance, Parvin, Aguilar, Sedgwick and/or Does 1 to 5. Said funds were not used for ongoing

3    litigation nor were said funds used for any lawful purpose properly authorized and disclosed by

4    the Governing Board of the Central Basin. Plaintiff is informed and believes that approximately

5    $2,000,000 of the Slush Fund was paid to HDR Engineering for non-litigation purposes.

6    Plaintiff is further informed and believes that at the time of the payments to HDR Engineering

7    David Cobb, a person with whom Wance had a romantic relationship and with whom Wance co-

8    habited, was a principal partner or other influential agent or employee of HDR Engineering.

9    Wance failed and refused to disclose to the Central Basin his intimate and romantic relationship.

10    15. The defendants' actions as alleged herein with respect to illegally and without proper Central

11    Basin Governing Board authorization and disclosure secretly transferring $1 million of public

12    funds for their own use and benefit and creation of said Slush Fund violated the California False

13    Claims Act. Specifically, the defendants' actions violated the following provisions of the

14    California Government Code:

15    a) §12651 (a)(1) Knowingly presents or causes to be presented a false or fraudulent claim for

16    payment or approval;

17    b) §12651 (a)(2) Knowingly makes, uses, or causes to be made or used a false record or

18    statement material to a false or fraudulent claim;

19    c) §12651 (a)(3) Conspires to commit a violation of this subdivision;

20    d) §12651 (a)(7) Knowingly makes, uses, or causes to be made or used a false record or

21    statement material to an obligation to pay or transmit money or property to the state or to any

22    political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases

23    an obligation to pay or transmit money or property to the state or to any political subdivision; and

24    e) § 12651 (a)(8) Is a beneficiary of an inadvertent submission of a false claim, subsequently

25    discovers the falsity of the claim, and fails to disclose the false claim to the state or the political

26    subdivision within a reasonable time after discovery of the false claim.

27    16. In committing the actions and omissions alleged herein Defendants Wance, Parvin, Aguilar,

28    Sedgwick and Does 1 to 5 and each of them conspired between and among themselves to and did

1 in fact violate the California False Claims Act and are thereby jointly and severally liable for all

2 damages alleged pursuant to Government Code §12651[c].

3 17. Plaintiff is informed and believes and thereon alleges that Defendant Does 6 to 20, and each

4 of them, are, pursuant to California Government Code §12651(a)(8), beneficiaries of an

5 inadvertent submission of a false claim, who subsequently discovered the falsity of the claim, and

6 failed to disclose the false claim to the Central Basin within a reasonable time after discovery of

7 the false claim. Said Does 6 to 20 received some unknown portion of the $1 million that was

8 secretly transferred from the Central Basin to the Sedgwick law firm. Accordingly, Defendant

9 Does 6 to 20 have violated the California False Claims Act and are liable for damages alleged

10 herein.



11 18. As a direct and proximate result of the actions and omissions of the Defendants as alleged

12 herein the Plaintiff is entitled to damages in the amount of no less than $1 million as the recovery

13 of the monies illegally taken from the Central Basin without proper legal authority or disclosure

14 and based on false statements, false records and a fraudulent claim. Additionally, Plaintiff is

15 entitled treble damages pursuant to Government Code §12651(a), costs and expenses of this

16 action; a civil penalty of not less that five thousand five hundred dollars ($5,500) and not more

17 than eleven thousand dollars ($11,000) for each violation of the California False Claims Act.

18 19. As a direct and proximate result of the actions and omissions of the Defendants as alleged

19 herein Qui Tam Plaintiff Vasquez is entitled to a percentage of the recovery of damages as

20 provided by law.

21 20. Plaintiff is also entitled to reasonable and necessary attorney fees incurred in initiating and

22 prosecuting this action.

23 21. After hearing mention of a Slush Fund, Vasquez spent months attempting to cause the

24 Central Basin to investigate the payments and to recover the money. Before filing this action

25 Vasquez took several steps to investigate, to cause the Central Basin to investigate, and

26 attempted to get the Central Basin to act to get a refund of the payments mentioned herein.

27 Vasquez's reasonable efforts to have the Central Basin seek recovery of these funds include but

28 are not limited to the following: