A. Shortly after learning of the Slush Fund Vasquez investigated and learned that the Certified Public Accountants, Teaman, Ramirez & Smith, Inc., hired by the Central Basin refused to complete its audit because the Central Basin could not provide any documentation showing that the payment of the $2.75 million was ever properly authorized by Central Basin board action and that the several contracts relating to payments from the Slush Fund were never approved by the Board pursuant to the Central Basin procurement policy.

B. On March 5, 2014 Vasquez wrote a letter to each member of the Central Basin Board of Directors, the General Manager (Dave Hill) and the General Counsel (Rick Olivarez) expressing her concern that the $2,750,000 in payments to Sedgwick and Buchalter were never publicly disclosed as required by law and asking that an investigation be done into (1) the legality of the June 28, 2010 closed session, and (2) the $2,750,000 in payments to Sedgwick and Buchalter. The March 5 letter asked eight specific questions about the payments; e. g. Were they authorized by the Board? Were they in connection with specific contracts? Were there invoices or other documents describing the purpose of the payments? Why they did not come before the Board for approval? None of the questions was answered.

C. On April 17, 2013 Vasquez made a request for documents under the Public Records Act; she requested 40 specific documents related to the Slush Fund.

D. On April 23, 2013 at a meeting of the Central Basin's Board of Directors, Vasquez requested that an item be placed on the Agenda for discussion at the next Board meeting, to authorize action to recover the $2,750,000 from the Buchalter and Sedgwick law firms. This request was ignored by the Central Basin Board and General Manager. Ms. Vasquez's request is reflected in the Central Basin official minutes from the April 23, 2013 meeting.

E. On May 26, 2013 Vasquez sent an email to each Central Basin Board member, the General Manager (Tony Perez), and General Counsel (Rick Olivarez) in which she detailed her efforts to get information about the Slush Fund, the resistance that she encountered, and her findings, including the lack of authorization of and disclosure of the $2,750,000 in payments to Buchalter and Sedgwick, the secrecy of the payments (wire transfer and never publicly disclosed as required by law; not shown on warrant runs), and the comments by former Central Basin Chief

1 Operating Officer Charles Fuentes that described the Slush Fund as "…. possible evidence of
waste, fraud, abuse of authority and perhaps even violations of the law". In that email Vasquez
requested inter alia that (1) the Central Basin seek return of the $2,750,000 and if the law firms
refused to refund the money, "I request that Mr. Olivarez initiate legal action to recover these
public funds on behalf of the Central Basin from whoever received them without proper
authorization", and (2) a legal opinion be obtained regarding the conclusion of Chief Operating
Officer Charles Fuentes regarding fraudulent conduct in violation of the law. Notwithstanding
these efforts, the Central Basin Board of Directors failed and refused to place the item on any
agenda for discussion, the Central Basin Board of Directors failed and refused to authorize any
action to recover the funds, and generally objected to and resisted any efforts by Vasquez to
recover the funds.

F. On May 31, 2013 Central Basin General Counsel Rick Olivarez specifically informed Ms. Vasquez that he refused to take any action to recover the $2.75 million slush fund unless and until there was a majority vote from the Central Basin Board of Directors instructing him to do so. As indicated above, the majority of the Board refused to even place the issue of recovering the funds on the agenda for a discussion. Even after the conclusion of a so-called independent investigation of the slush fund by outside law firm Arent Fox, which found violations of law, there was no comment or recommendation in the investigative report to take any action to recover the $2.75 million of unauthorized payment of public funds.

G. Ultimately, the Central Basin Board of Directors voted to instruct it[its] General Counsel,  Rick Olivarez, to formally notify this court that the Central Basin refused to participate in this action to recover the $2.75 million of unauthorized payment of public funds.

22. The Central Basin's Board has voluntarily and publicly acquiesced in and consented to the disclosure of the specific legal advice that it received from its General Counsel (Wance) regarding and at the closed session discussion and vote of June 28, 2010 and the creation of the litigation trust fund (Slush Fund) and in several methods as follows:.

A. At the urging of Vasquez the Central Basin Board retained special counsel, the Arent Fox law firm, to investigate the legality of the June 28, 2010 closed session and the creation of

the Slush Fund including interviews with Central Basin board members regarding their memory of the events.

    B. On February 24, 2014 Arent Fox drafted a five-page letter to the Central Basin Board summarizing some of its analysis and findings regarding its investigation (the "Arent Fox Letter").

    C. The February 24, 2014 Arent Fox Letter discloses the specific advice given to the Central Basin Board by its General Counsel (Wance) and specific actions taken by the General Counsel at the June 28, 2010 closed session meeting and the public reporting of that meeting.

    D. At a public meeting of the Central Basin's Board of Directors on March 24, 2014, with all Board members and the General Counsel (Rick Olivarez) and General Manager present, the Arent Fox attorney investigator discussed the Arent Fox investigation, the Arent Fox February 24, 2014 Letter and their then forthcoming report. At that public meeting on March 24, 2014 in open session the Arent Fox attorney investigator fully disclosed in public the legal advice given to the Central Basin Board of Directors during the June 28, 2010 closed session board meeting regarding the creation of the slush fund. The Arent Fox attorney specifically stated that the board had been advised in closed session by Wance that it was legal and proper to keep secret (i.e. fail to publicly disclose in any way) the creation of the trust fund and to characterize it as ongoing litigation. During this open public meeting on March 24, 2014 the Arent Fox attorney also specifically stated that the Central Basin Board of Directors relied on Wance's legal advice given in closed session that it was legal and proper to keep the slush fund secret and fail to make the required public disclosures. As a result of Wance's legal advice the slush fund and payments made thereunder were never publicly disclosed. At the March 24, 2014 open and public board meeting every member of the Board of Directors acquiesced in and consented to the disclosures of the Wance legal advice from the June 28, 2010 closed session regarding keeping the slush fund secret. No Board member at the March 24, 2014 meeting objected to or in any way criticized or tried to prevent the public disclosures of Wance's legal advice given during the June 28, 2010 closed session. Throughout the March 24, 2014 board meeting, including during the disclosures made by the Arent Fox attorney investigator, the Central Basin General Manager and

First Amended Complaint      Page -14-
Case 2:18-31087 Doc# 157-2 Filed: 02/21/19 Entered: 02/21/19 09:37:40 Page 3 of 13
Case 18-31087 Claim# 7-1 Part 2 Filed 01/31/19 Desc Attachment 1 Page 10 of 31

General Counsel were present. Neither the General Manager nor the General Counsel present at the March 24, 2014 meeting objected to or in any way criticized or tried to prevent the public disclosures of Wance's legal advice given during the June 28, 2010 closed session. In fact, the Board authorized the March 24, 2014 public meeting to be videotaped and posted on the Central Basin's internet Web site for the world to see and hear. At the present time, the disclosure of the Wance legal advice made at March 24, 2014 public meeting is still accessible to the public on the Central Basin's internet Web site.

E. At the March 24, 2014 public Board meeting, the Central Basin Board voted to release, and did release, to the media the Arent Fox Letter. The Board also made the Arent Fox Letter available to the public by posting it on the Central Basin's internet Web site.

F. Art Aguilar, former General Manager of Central Basin, was deposed in an unrelated Central Basin civil lawsuit in November, 2013. Mr. Aguilar served as General Manager for the Central Basin at the time of the creation of the slush fund in June 2010. During the deposition, with opposing counsel present, Mr Aguilar voluntarily disclosed Mr. Wance's specific legal advice given to the Central Basin Board at the June 28, 2010 board meeting that it was proper to keep the slush fund secret. Mr. Aguilar's specifically stated that Mr. Wance gave the advice in closed session and further advised the Board that it was legal and proper to keep secret all contracts relating to the trust fund. At the time of this testimony the Central Basin was represented by independent attorneys. There was no objection whatsoever made to this disclosure. There has been no subsequent effort to object to or prevent the disclosure of Mr. Aguilar's testimony. The Board was aware of this testimony and did not object to it nor did it take any other steps to prevent it from being disclosed. This testimony is currently available to the public on the You Tube internet Web site.

## SECOND CAUSE OF ACTION
## AGAINST BUCHALTER NEMER A PROFESSIONAL LAW CORPORATION, DOUGLAS EUGENE WANCE, ART AGUILAR AND DO ES 31 TO 50 FOR VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT
### (Govt. Code §12651(a))

23. Plaintiff realleges and incorporates herein by this reference each and every allegation of paragraphs A through F of the Summary of Action.

24. Plaintiff is informed and believes and thereon alleges that defendant Buchalter Nemer is a professional Corporation conducting the practice of law in the City and County of Los Angeles, California and has offices located at 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California.

25. Plaintiff is informed and believes and thereon alleges that at all pertinent times alleged herein defendant Wance was a licensed California attorney at law working as a partner, employee, agent and authorized representative for defendant Buchalter Nemer. At all pertinent times alleged herein defendant Wance was acting within the course and scope of his partnership, employment, agency or representation for and on behalf of defendant Buchalter Nemer.

26. Sometime on or about February 2012 the Central Basin Governing Board retained Buchalter Nemer to provide legal services to the Central Basin. As part of that retention of services, Wance was designated by Buchalter Nemer and the Central Basin as the principal attorney and primary contact person and General Counsel from Buchalter Nemer for the Central Basin. Before the retention of Buchalter Nemer, Wance served as General Counsel for the Central Basin while working for another law firm, co-defendant Sedgwick. For reasons that are currently unknown to plaintiff and at a time that is currently unknown to plaintiff Wance left the Sedgwick firm and joined the Buchalter Nemer firm.

27. While serving as General Counsel from Buchalter Nemer, Wance, among other things, regularly prepared and assisted in the preparation of the public meeting agendas and closed session entries for the public meeting agendas, gave general and specific legal advice to the Central Basin Governing Board, gave general and specific advice to the Central Basin employees and staff especially with respect to the preparation of the Central Basin agenda, minutes of the Central Basin meetings and resolutions for the governing Board of the Central Basin, represented the Central Basin in various litigation matters, attended Central Basin closed session meetings with the Governing Board and gave legal advice during said closed sessions, prepared documentation on behalf of the Central Basin and generally functioned as the Central Basin's

principal attorney and General Counsel and principal legal advisor. The Central Basin staff and Governing Board reasonably in good faith relied on and trusted Wance's legal advice and guidance with respect to the preparation and contents of its agendas, minutes of meetings and resolutions of actions taken by the governing Board.

28. Plaintiff is unaware of the true names and capacities of Defendant Does 21 to 40 and therefore sues said Doe Defendants using their fictitious identities. When plaintiff ascertains the true names and capacities of said Doe Defendants plaintiff will so inform the court and will seek leave to amend the complaint to state said true names and capacities. Plaintiff is informed and believes that said Doe Defendants 21 to 40, and each of them, are agents, employees, or otherwise representatives of defendant Buchalter Nemer and/or the Central Basin. Plaintiff is informed and believes that said Doe Defendants 21 to 40, and each of them, are in some manner responsible for the damages alleged by plaintiff herein.

29. Sometime shortly before June 28, 2010 Defendant Wance, while acting as the Central Basin General Counsel, and/or Parvin also while serving as an attorney for the Central Basin, Aguilar and Defendant Does 1 to 5 and each of them knowingly prepared, or under their direct supervision and instruction knowingly caused to be prepared a false and erroneous closed session agenda item for the Central Basin public meeting of June 28, 2010. The false and erroneous closed session item stated "54956.9 [c] Conference with legal Counsel Anticipated Litigation -1 Item". Pursuant to the direction and instruction of Wance, Parvin, Aguilar and Does 1 to 5, the agenda containing said false and erroneous closed session entry was published and otherwise disseminated to the public as the official notice of said meeting pursuant to the Brown Act. At the time of the preparation and dissemination of said agenda defendants Wance, Parvin, Aguilar and Does 1 to 5 were aware of the false and erroneous closed session entry and knowingly caused it to be published to the public. Specifically, Wance, Parvin, Aguilar and Does 1 to 5 knew that the real intention and purpose of the closed session anticipated litigation entry was to discuss ways and means to secretly transfer $1 million to the Sedgwick law firm for unauthorized and undisclosed non-litigation purposes. Wance, Parvin, Aguilar and Does 1 to 5 used the anticipated litigation exception to the Brown Act as a pretext and ruse so they would not have to

First Amended Complaint Page -17-

publicly disclose their true intentions and purposes. During the Central Basin closed session of June 28, 2010 Wance falsely advised the Central Basin Board that it was legal and proper to discuss and approve matters related to ground water storage under the description of "anticipated litigation". Wance was well aware that his advice was false and that such discussions and approval were required to be publicly disclosed. Plaintiff is informed and believes that the Board reasonably believed and relied on Wance's false legal advice.

30. On June 28, 2010 after the Central Basin Governing Board's closed session Defendants Wance, Parvin, Aguilar and Does 1 to 5 falsely and erroneously reported to the public that during the closed session the governing Board approved an action to provide resources for "ongoing litigation" pursuant to and consistent with the false closed session entry listed on the agenda and Wance's false legal advice regarding the propriety of having such discussion in closed session. Wance, Parvin, Aguilar and Does 1 to 5, and each of them, used said false and erroneous June 28, 2010 closed session agenda entry and Wance's false legal advice as a basis to discuss ground water storage that would otherwise have to be publicly disclosed on the agenda. Wance, Parvin, Aguilar and Does 1 to 5 were aware that there was public opposition (that could defeat the $1,000,000 payment) to the Central Basin using its resources for ground water storage and therefore decided to conceal this intention by using the litigation exception in the Brown Act to avoid disclosure. As specified in more detail below, the plaintiff is informed and believes that Wance, Aguilar and Does 31 to 35 used this false closed session report and Wance's false legal advice as a pretext, ruse and justification to unlawfully transfer $1.75 million of Central Basin monies as prepaid legal expenses to a Buchalter Nemer bank account without authority or approval of the Central Basin Governing Board. The false and erroneous report from closed session regarding "ongoing litigation" was a "...false record or statement material to a false or fraudulent claim..." as those terms are used in government Code §12651(a)(2). The creation and use of said false and erroneous agenda entry, Wance's false legal advice and false report from closed session formed the justification to give instructions to Central Basin employees who were tasked with actually transferring $1.75 million of Central Basin funds to a Buchalter Nemer Bank account.

First Amended Complaint Page -18-

31. Wance and Does 31 to 35 knowingly used the false closed session entry and closed session report and Wance's false legal advice as a pretext and ruse to secretly transfer $1.75 million from the Central Basin for Buchalter Nemer's and Wance's personal use and benefit without proper authorization from the Central Basin Governing Board and without disclosure to the public as required by law. Subsequently in the year 2012, after Wance left the Sedgwick firm and joined the Buchalter Nemer firm, Wance and Does 31 to 35 knowingly used the same false closed session entry as a pretext and ruse to obtain $1.75 million from the Central Basin for Buchalter Nemer's and Wance's personal use and benefit without proper authorization from the Central Basin Governing Board and without disclosure to the public as required by law. The creation and use of the same false closed session entry to effect the secret transfer of the $1.75 million was a "...false record or statement material to a false or fraudulent claim..." as those terms are used in Government Code §12651(a)(2). The creation and use of the same false closed session entry formed the basis for said Defendants presentation of a false or fraudulent claim for payment or approval as those terms are used in Government Code §12651(a)(1).

32. Shortly after the June 28, 2010 Central Basin meeting Defendants Wance and Parvin, while acting as the Central Basin General Counsel, Aguilar and Defendant Does 1 to 5 and each of them knowingly prepared, or under their direct supervision and instruction knowingly caused to be prepared false and erroneous minutes for the Central Basin Agenda public meeting of June 28, 2010. Those minutes falsely stated that the Governing Board had instructed the General Manager to make resources available for "ongoing litigation". The false and erroneous minutes of the June 28, 2010 meeting was a "...false record or statement material to a false or fraudulent claim..." as those terms are used in Government Code §12651(a)(2). The creation and use of said false and erroneous minutes formed the basis for said Defendants presentation of a false or fraudulent claim for payment or approval as those terms are used in Government Code §12651(a)(1).

33. On or about February 9, 2012 Wance, while acting as an employee, agent and representative of Buchalter Nemer and with Buchalter Nemer's full knowledge and consent, along with Aguilar and Does 31 to 35 caused $1 million of Central Basin funds to be secretly paid without public

disclosure by wire transfer to a Buchalter Nemer law firm bank account in direct violation of the law and without approval or proper authority of or disclosure to the Central Basin Governing Board. On or about March 26, 2012 Wance, while acting as an employee, agent and representative of Buchalter Nemer and with Buchalter Nemer's full knowledge and consent, Aguilar and Does 31 to 35 caused $750,000 of Central Basin funds to be secretly paid without public disclosure of the recipient by wire transfer to a Buchalter Nemer law firm bank account in direct violation of the law and without approval or proper authority of or disclosure of the recipient to the Central Basin Governing Board. Plaintiff is informed and believes that Wance and Does 31 to 35 knowingly gave false legal advice to the Central Basin Board of Directors, created false documents, contracts and records or other false written authorities and presented the same to the Central Basin bank and knowingly falsely represented to the Central Basin bank that the transfer of the $1 million on or about February 9, 2012 and the $750,000 on or about March 26, 2012 to Buchalter Nemer were authorized by the Central Basin Governing Board. Plaintiff is informed and believes that Wance and Does 31 to 35 falsely claimed that the Board voted to approve the transfer of $1,750,000 to Buchalter Nemer. Wance and Does 31 to 35 intentionally used secret wire transfers of the funds instead of the normal Central Basin procedure of publicly disclosing the expenditure of the money on the public warrant run. The creation and use of said false documents, false legal advice, contracts and records or other false written authorities to effect the secret transfer of the $1,750,000 to Buchalter Nemer was a "...false record or statement material to a false or fraudulent claim..." as those terms are used in Government Code §12651(a)(2). The creation and use of said false documents, contracts, and records or other false written authorities formed the basis for said Defendants presentation of a false or fraudulent claim for payment or approval as those terms are used in Government Code §12651(a)(1).

34. At the time that Wance was taking the actions hereinabove described to secretly and without authority transfer $1.75 million of Central Basin funds to the Buchalter Nemer bank account, Buchalter Nemer was fully aware of his actions and or acted in deliberate ignorance of the truth or with reckless disregard for the truth.

35. Plaintiff is informed and believes, and thereon alleges, that commencing on or about

February 2012 and continuing for the next several months thereafter, Defendants Wance, Buchalter Nemer, Aguilar and Does 31 to 35 started spending the $1.75 million in Central Basin funds that had been secretly transferred to the Buchalter Nemer bank account. Plaintiff is informed and believes that the $1.75 million dollars was improperly and illegally paid to associates, friends, political allies and other persons related to or otherwise associated with Defendants Wance, Buchalter Nemer and Does 31 to 35 without any authority from and without any benefit to and without the knowledge of the Central Basin Governing Board. Said funds were not used for ongoing litigation nor were said funds used for any lawful purpose properly authorized by or disclosed to the governing Board of the Central Basin. Plaintiff is informed and believes that approximately $2,000,000 of the Slush Fund was paid to HDR Engineering for non-litigation purposes. Plaintiff is further informed and believes that at the time of the payments to HDR Engineering David Cobb, a person with whom Wance had a romantic relationship and with whom Wance co-habited, was a principal, partner or other influential agent or employee of HDR Engineering. Wance failed and refused to disclose to the Central Basin his intimate relationship.

36. The defendants' actions as alleged herein with respect to illegally and without proper authorization secretly transferring $1.75 million of public funds for their own use and benefit violate the California False Claims Act. Specifically, the defendants' actions violate the following provisions of the California Government Code:

a) §12651 (a)(1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

b) §12651 (a)(2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

c) §12651 (a)(3) Conspires to commit a violation of this subdivision;

d) §12651 (a)(7) Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision; and

e) § 12651 (a)(8) Is a beneficiary of an inadvertent submission of a false claim, subsequently

discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

37. In committing the actions and omissions alleged herein Defendants Wance, Buchalter Nemer and Does 31 to 35 and each of them conspired between and among themselves to and did in fact violate the California False Claims Act and are thereby jointly and severally liable for all damages alleged pursuant to Government Code §12651[c].

38. Plaintiff is informed and believes and thereon alleges that Defendant Does 36 to 50, and each of them are, pursuant to California Government Code §12651(a)(8), beneficiaries of an inadvertent submission of a false claim, who subsequently discovered the falsity of the claim, and failed to disclose the false claim to the Central Basin within a reasonable time after discovery of the false claim. Said Does 36 to 50 have violated the California False claims Act and are liable for the damages alleged herein.

39. After hearing mention of a Slush Fund, Vasquez spent months attempting to cause the Central Basin to investigate the payments and to recover the money. Before filing this action Vasquez took several steps to investigate, to cause the Central Basin to investigate, and attempted to get the Central Basin to act to get a refund of the payments mentioned herein. Vasquez's reasonable efforts to have the Central Basin seek recovery of these funds include but are not limited to the following:

    A. Shortly after learning of the Slush Fund Vasquez investigated and learned that the Certified Public Accountants, Teaman, Ramirez & Smith, Inc., hired by the Central Basin refused to complete its audit because the Central Basin could not provide any documentation showing that the payment of the $2.75 million was ever properly authorized by Central Basin board action and that the several contracts relating to payments from the Slush Fund were never approved by the Board pursuant to the Central Basin procurement policy.

    B. On March 5, 2014 Vasquez wrote a letter to each member of the Central Basin Board of Directors, the General Manager (Dave Hill) and the General Counsel (Rick Olivarez) expressing her concern that the $2,750,000 in payments to Sedgwick and Buchalter were never publicly disclosed as required by law and asking that an investigation be done into (1) the legality

of the June 28, 2010 closed session, and (2) the $2,750,000 in payments to Sedgwick and Buchalter. The March 5 letter asked eight specific questions about the payments; e. g. Were they authorized by the Board? Were they in connection with specific contracts? Were there invoices or other documents describing the purpose of the payments? Why they did not come before the Board for approval? None of the questions was answered.

    C. On April 17, 2013 Vasquez made a request for documents under the Public Records Act; she requested 40 specific documents related to the Slush Fund.

    D. On April 23, 2013 at a meeting of the Central Basin's Board of Directors, Vasquez requested that an item be placed on the Agenda for discussion at the next Board meeting, to authorize action to recover the $2,750,000 from the Buchalter and Sedgwick law firms. This request was ignored by the Central Basin Board and General Manager. Ms. Vasquez's request is reflected in the Central Basin official minutes from the April 23, 2013 meeting.

    E. On May 26, 2013 Vasquez sent an email to each Central Basin Board member, the General Manager (Tony Perez), and General Counsel (Rick Olivarez) in which she detailed her efforts to get information about the Slush Fund, the resistance that she encountered, and her findings, including the lack of authorization of and disclosure of the $2,750,000 in payments to Buchalter and Sedgwick, the secrecy of the payments (wire transfer and never publicly disclosed as required by law; not shown on warrant runs), and the comments by former Central Basin Chief Operating Officer Charles Fuentes that described the Slush Fund as ".... possible evidence of waste, fraud, abuse of authority and perhaps even violations of the law". In that email Vasquez requested inter alia that (1) the Central Basin seek return of the $2,750,000 and if the law firms refused to refund the money, "I request that Mr. Olivarez initiate legal action to recover these public funds on behalf of the Central Basin from whoever received them without proper authorization", and (2) a legal opinion be obtained regarding the conclusion of Chief Operating Officer Charles Fuentes regarding fraudulent conduct in violation of the law. Notwithstanding these efforts, the Central Basin Board of Directors failed and refused to place the item on any agenda for discussion, the Central Basin Board of Directors failed and refused to authorize any action to recover the funds, and generally objected to and resisted any efforts by Vasquez to

recover the funds.

F. On May 31, 2013 Central Basin General Counsel Rick Olivarez specifically informed Ms. Vasquez that he refused to take any action to recover the $2.75 million slush fund unless and until there was a majority vote from the Central Basin Board of Directors instructing him to do so. As indicated above, the majority of the Board refused to even place the issue of recovering the funds on the agenda for a discussion. Even after the conclusion of a so-called independent investigation of the slush fund by outside law firm Arent Fox, which found violations of law, there was no comment or recommendation in the investigative report to take any action to recover the $2.75 million of unauthorized payment of public funds.

G. Ultimately, the Central Basin Board of Directors voted to instruct its General Counsel, Rick Olivarez, to formally notify this court that the Central Basin refused to participate in this action to recover the $2.75 million of unauthorized payment of public funds.

40. The Central Basin's Board has voluntarily and publicly acquiesced in and consented to the disclosure of the specific legal advice that it received from its General Counsel (Wance) regarding and at the closed session discussion and vote of June 28, 2010 and the creation of the litigation trust fund (Slush Fund) and in several methods as follows:.

A. At the urging of Vasquez the Central Basin Board retained special counsel, the Arent Fox law firm, to investigate the legality of the June 28, 2010 closed session and the creation of the Slush Fund including interviews with Central Basin board members regarding their memory of the events.

B. On February 24, 2014 Arent Fox drafted a five-page letter to the Central Basin Board summarizing some of its analysis and findings regarding its investigation (the "Arent Fox Letter").

C. The February 24, 2014 Arent Fox Letter discloses the specific advice given to the Central Basin Board by its General Counsel (Wance) and specific actions taken by the General Counsel at the June 28, 2010 closed session meeting and the public reporting of that meeting.

D. At a public meeting of the Central Basin's Board of Directors on March 24, 2014, with all Board members and the General Counsel (Rick Olivarez) and General Manager present,