1
2
3
4
5
6

John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone:    415.263.7000
Facsimile:    415.263.7010
Email:        jlucas@pszjlaw.com
              jrosell@pszjlaw.com

Attorneys for Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>SEDGWICK, LLP,<br><br>            Debtor. | Case No. 18-31087 (HLB)<br><br>Chapter 11<br><br>**MOTION FOR ORDER APPROVING THE COMPROMISE OF A CONTROVERSY AMONG THE DEBTOR, LETICIA VASQUEZ, CENTRAL BASIN MUNICIPAL WATER DISTRICT, AND BUCHALTER, A PROFESSIONAL CORPORATION** |

Sedgwick, LLP, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), submits this motion (the "**Motion**"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for approval of a compromise among the Debtor, Leticia Vasquez ("**Vasquez**") on behalf of herself and the Central Basin Municipal Water District ("**Central Basin**"), and Buchalter, a Professional Corporation ("**Buchalter**" and together with the Debtor, Vasquez, and Central Basin, the "**Parties**") relating to a qui tam action brought under the California False Claims Act by Vasquez against the Debtor and Buchalter, as set forth more fully in the *Settlement Agreement and Release* attached hereto as **Exhibit A** (the "**Settlement Agreement**").

This Motion is based on the following memorandum of points and authorities, the declaration of Curtis D. Parvin annexed hereto as **Exhibit B** (the "**Parvin Declaration**"), and any other evidence properly before the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Pursuant to the Motion, the Debtor seeks the entry of an order approving the terms and conditions of a compromise among the Debtor, Vasquez, Central Basin, and Buchalter under Bankruptcy Rule 9019(a). The compromise among the parties is documented in the Settlement Agreement, which will become effective upon approval by the Court, Central Basin, and the state court presiding over the stayed qui tam action commenced by Vasquez on behalf of herself and Central Basin.

As set forth in greater detail below, the Settlement Agreement is being funded by the Debtor's and Buchalter's insurance carriers. As a result, the approval of the Settlement Agreement will not require the Debtor to pay any cash to plaintiffs and should also cause Douglas Wance to withdraw his proof of claim number 77, which was filed in an unliquidated amount of $4.2 million. Accordingly, the Debtor respectfully submits that the Settlement Agreement is in the best interest of the estate and should be approved.

## II.

## STATEMENT OF FACTS

### A. General Background

On October 2, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

On October 14, 2018, the Office of the United States Trustee appointed the following unsecured creditors to be members of the official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code: (a) BMO Harris Bank, (b) CPF 801 Tower LLC, and (c) One North Wacker Drive LLC.

### B. The Central Basin Action

The Debtor represented the Central Basin as legal counsel between approximately 2006 and 2013. In the course of the legal representation, the Debtor opened and administered a client trust

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

account in the amount of $1,000,000.  Buchalter represented Central Basin as legal counsel beginning in 2011.  In the course of the legal representation, Buchalter opened and administered a client trust account in the amount of $1,750,000.  Plaintiff alleged that Sedgwick and Buchalter opened and administered these respective client trust accounts without proper authority from Central Basin and without disclosure to the public.

## C.    The Dispute

As to the Debtor, Vasquez argued that she should prevail because, she claimed, no written records showed clear authorization from Central Basin or its board to open the trust fund, use the trust fund in furtherance of litigation, or to issue payments from the trust fund.  Vasquez further argued she should prevail because none of the Central Basin members recalled authorizing the trust fund in connection with litigation and all of them testified they would not have opened the fund in a "closed" (*i.e.*, non-public) session if they had not been advised to do so by the Debtor.

The Debtor expected it would prevail because various statutory provisions of the California False Claims Act barred recovery, including what are known as the "public disclosure" and "public employee" bars.  The Debtor also expected to prevail because Central Basin's board had approved the establishment of the trust account as confirmed by a board member and general manager and because the Debtor maintained full records showing that Central Basin's highest non-elected official granted written approval for each payment from the Debtor's trust account.

## D.    The Settlement Agreement

The Debtor and Buchalter, on the one hand, and Vasquez and Central Basin on the other have decided to settle the controversy among them to avoid the cost, inconvenience, delays, and uncertainties involved in further legal proceedings.  The compromise reached between the parties is documented in the Settlement Agreement.  As set forth more fully in the Settlement Agreement, the Parties have agreed that the Debtor's and Buchalter's insurers shall pay Central Basin $2,250,000 upon the approval by: Central Basin and its prosecuting attorney, the state court presiding over the Central Basin action, and this Court. In addition, the Parties will release any other claims against the other as set forth in the Settlement Agreement.

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**E.      The Settlement Agreement Was Entered Into in Good Faith**

As set forth in the Parvin Declaration, Mr. Parvin believes that the Settlement Agreement was entered into in good faith and represents a fair bargain for the Debtor's estate as well as its general unsecured creditors because the Debtor is not required to pay any portion of the claim and the settlement reduces or eliminates claims against the estate.  The Settlement Agreement will avoid unnecessary and protracted litigation involving two causes of action pursuant to the California False Claims Act, Gov. Code § 12650 *et. seq.*  The expeditious resolution of the Parties' claims by way of payment made by insurers greatly outweigh the release given by the Debtor.

For all the foregoing reasons, the Debtor supports the Settlement Agreement and asks that the Court approve the compromise embodied therein.

### III.

### ARGUMENT

**A.      Standard for Approval of Compromise Under Bankruptcy Rule 9019**

Bankruptcy Rule 9019(a) provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In reviewing proposed settlements, the standard that courts applied under the former Bankruptcy Act also applies under the Bankruptcy Code.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).  The U.S. Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414 (1968), that in order to approve a proposed settlement under the Bankruptcy Act, a court must have found that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  *Carla Leather*, 44 B.R. at 466.

A court, however, should not substitute its own judgment for the judgment of a trustee or a debtor.  *Id*. at 465.  In reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983).  "When assessing a compromise, courts need not rule upon disputed facts and questions of law,

4

but rather only canvass the issues. A mini trial on the merits is not required." *In re Schmitt*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) (citations omitted).

The Ninth Circuit has held that in considering a proposed compromise, the Court must evaluate the following factors: (i) the probability of success; (ii) the difficulties, if any, of collection; (iii) the complexity of litigation involved, and the expense, inconvenience and delay in necessarily attending to it; and (iv) the paramount interests of creditors. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom*).

Many issues arise in evaluating whether a settlement is appropriate, including bankruptcy issues, collectability issues, and whether better alternatives exist. Those issues are discussed below.

**B.    The Probability of Success Factor Favors a Compromise**

Although the Debtor is confident in its position that it would prevail that it had the proper and necessary authorization to open the trust fund and pay itself from the account, Vasquez raised various novel claims and issues that, if litigated, would require the Debtor's insurer to expend resources defeating the claims and the Debtor's insurer determined that it was most cost effective to settle the claims rather than litigating them to finality. The Debtor is also aware that there is always an inherent risk in litigation and there was a chance that if Vasquez prevailed, the insurance would not cover any judgment. In the instant case, such risk outweighs the benefit of resolving Vasquez's and Central Basin's claims without any detriment to the general unsecured creditors or the Debtor's estate since the resolution will not result in claims against the estate or payments by the Debtor. Accordingly, the Debtor submits that the first factor of the traditional test under *A & C Properties* supports approval of the compromise reflected in the Settlement Agreement.

**C.    The Difficulties of Collection are Not Relevant**

The Debtor does not believe this factor is applicable because the Debtor is not seeking to collect or recover a payment but eliminate a potential liability.

**D.    The Expense, Inconvenience, and Delay of Further Litigation**

The third factor of the test under *A & C Properties* is the complexity of litigation involved, and the expense, inconvenience, and delay in attending to it. As discussed above regarding the probability of success, although the Debtor is confident in its position, the consummation of the Settlement

5

Agreement will avoid the expense of litigation, including the cost to prepare briefs, attend hearings, and enforce a judgment – likely far outweighing the immediate benefits to the estate because the Debtor's and Buchalter's insurers are paying the monetary obligations on their behalf. It is important to note that the Parties have only incurred a moderate amount of expenses to date in relation to the dispute but acknowledge that the expenses would be substantial if they were litigated to conclusion. For the foregoing reasons, the Debtor submits that the third factor under *A & C Properties* favors approval of the Settlement Agreement.

**E.** **The Settlement Agreement Serves the Interests of Creditors**

Finally, as outlined in the Parvin Declaration and explained above, the Debtor believes that the deal embodied in the Settlement Agreement serves the interests of creditors. As discussed above, the Settlement Agreement will avoid unnecessary and potentially protracted litigation, the potential for an uncovered judgment, reduce the potential pool of general unsecured claims, and all monetary obligations are being performed by third party insurers. Accordingly, the Settlement Agreement is in the best interests of the Debtor's estate and its creditors.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Debtor requests that the Court approve the Settlement Agreement. A proposed form of order is attached hereto as **Exhibit C**.


Dated: March 28, 2019                          PACHULSKI STANG ZIEHL & JONES LLP


                                               By: */s/ John W. Lucas*
                                                   John W. Lucas

                                               Attorneys for the Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT A

## Settlement Agreement

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of the Effective Date, as defined herein, among Leticia Vasquez ("Vasquez") on behalf of herself and the Central Basin Municipal Water District (the "CBMWD"), Sedgwick LLP ("Sedgwick") and Buchalter, A Professional Corporation ("Buchalter") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## RECITALS

A.     Sedgwick and Buchalter (collectively, the "Defendants") represented CBMWD as CBMWD's legal counsel at various times, depending on the Defendant, between 2006 and 2013.

B.     On August 16, 2013, Vasquez filed a Complaint in Los Angeles Superior Court, Case No. BC518653 alleging claims against Defendants and others.  On August 22, 2014, Vasquez filed an Amended Complaint (hereinafter, the "Claim").  Vasquez alleges two causes of action  pursuant to the California False Claims Act, Gov. Code § 12650 *et seq*.  CBMWD declined to intervene in the Claim.

C.     All of the defendants named in the Claim dispute and deny all of the allegations in the Claim. This Agreement shall not in any way be construed as an admission by any of them that all or any of them has any liability, or has acted negligently or wrongfully in any manner, or has caused any damages.  This Agreement shall not be construed as an admission by any defendant named in the Claim that the allegations and causes of action asserted by Vasquez are in any way valid or meritorious.

The above recitals are hereby incorporated into this Agreement as if fully set forth herein.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

3558943.2



<u>TERMS AND CONDITIONS</u>

1.  *Amount and Method of Payment*: The Parties have agreed to settle this matter for the aggregate sum of $2,250,000 (the "Settlement Amount"). Sedgwick's and Buchalter's respective insurance carriers shall pay $2,250,000 by electronic funds transfer no later than forty-five (45) days after the Effective Date of this Agreement pursuant to court order.

2.  *Attorney's Fees and Costs*: Following the Effective Date of this Agreement, Vasquez shall recover her reasonable attorneys' fees, as determined by Court order, from the Settlement Amount and will not seek to recover and shall not recover any additional fees or costs from Defendants, Curtis Parvin, Douglas Wance, or Defendants' insurance carriers. Defendants shall bear their own legal and other costs incurred in connection with this matter.

3.  *Approval by the CBMWD*: This Agreement is conditioned upon written approval of the dismissal of the Claim with prejudice by the Court and by the prosecuting authority of the CBMWD as defined in Government Code § 12652(c)(1). The written approval of the prosecuting authority of the CBMWDshall be expressed by signature of the prosecuting authority of the CBMWD on the attached Exhibit 1. Written approval by the prosecuting authority of the CBMWD must be obtained no later than ninety (90) days after the date of signature of the last signatory to the Agreement, subject to a mutually agreed extension by the written agreement of all Parties. Vasquez will have an opportunity to seek and obtain judicial relief within this ninety (90) day period. Absent timely written approval of the dismissal of the Claim with prejudice by the prosecuting authority of the CBMWD, this Agreement is void.

4.  *Approval by the Bankruptcy Court*: On October 2, 2018, Sedgwick commenced a voluntary chapter 11 case under title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), in a case captioned *In re Sedgwick, LLP*, Case No. 18-31087.

3558943.2

Accordingly, the Parties hereto agree that any payment by Sedgwick will solely be through its insurance carriers and not from Sedgwick's estate. Sedgwick's participation in this Agreement is conditioned upon obtaining the Bankruptcy Court's authorization to enter into this Agreement. Upon execution of this Agreement by all the Parties, Sedgwick shall promptly file a settlement motion with the Bankruptcy Court that seeks approval of the settlement agreement pursuant to Bankruptcy Rule 9019 within ten (10) days of the Effective Date . The effectiveness of Sedgwick's entry into this Agreement will be conditioned upon the Bankruptcy Court's entry of an order (the "Bankruptcy Approval Order") approving Sedgwick's participation. Sedgwick is presently not aware of any issues that would cause the Bankruptcy Court to withhold approval of the settlement agreement.

5. *Application for Court Approval of the Settlement*: No less than seven (7) days following the latter of the written approval of the dismissal of the Claim with prejudice by the prosecuting authority of the CBMWD, as described in Paragraph 3, and the written approval of the Bankruptcy Court, as described in Paragraph 4, Vasquez shall apply to the Los Angeles Superior Court for an order (an "Approval Order") dismissing with prejudice the Claim by Vasquez and by the CBMWD as to all named parties, including Defendants, Parvin , and Wance ("Wance").

    (a)    No less than seven (7) days following the latter of the written approval of the dismissal of the Claim with prejudice by the prosecuting authority of the CBMWD, as described in Paragraph 3, and the written approval of the Bankruptcy Court, as described in Paragraph 4, the attorneys for the Parties shall fully execute and file the joint stipulation of dismissal of defendants in the form attached as Exhibit 2. Vasquez shall use her reasonable best efforts to obtain entry of the order of dismissal and seek to cause said order of dismissal to become

3558943.2

a final and non-appealable order without amendment or modification thereto as soon as possible. The Parties agree to cooperate with each other and perform all acts reasonably necessary to accomplish the terms of this paragraph.

6.  *Effective Date*: The Effective Date of the Agreement shall be the date of entry of the Approval Order by the Los Angeles Superior Court. Doug Wance shall have five (5) days from the Effective Date to elect to be a signatory to the settlement without any right to change any of the terms of this Agreement.

7.  *Distribution:* The Settlement Amount shall be distributed pursuant to an order from the Court on application to be separately brought by Vasquez and/or CBMWD allocating the Settlement Amount under Government Code section 12652, subdivision (g)(3), as described further below.

8.  *Application for Order Allocating Settlement Proceeds*: Vasquez and/or CBMWD shall apply to the Court for an order allocating the Settlement Amount pursuant to Government Code section 12652, subdivision (g)(3). Defendants will not be parties to this proceeding and agree they will take no position before the Court regarding allocation of the Settlement Amount.

9.  *General Release*: In consideration of the terms and conditions of this Agreement and conditioned upon the entry of an order of dismissal with prejudice of the Action by Vasquez and CBMWD:

    a.  Vasquez on behalf of herself and the CBMWD hereby releases and forever discharges Defendants, their parents, subsidiaries, affiliates, officers, owners, directors, shareholders, employees, attorneys, representatives, insurers, and agents of any kind, including Parvin and Wance (the "Plaintiffs' Released Parties") from any and all claims of any kind, known or unknown, in law or equity, on any facts or theory whatsoever that have occurred prior to the date of this Agreement. This release is a

3558943.2

Case: 18-31087    Doc# 191    Filed: 03/28/19    Entered: 03/28/19 11:16:31    Page 11 of 26

general release of all claims and potential claims. Vasquez expressly acknowledges and agrees that this release is intended to extinguish all claims of every type, including those known and unknown and those suspected and unsuspected, without regard to whether they are now known or suspected, even if those claims might have materially affected Vasquez's decision to enter into this release or Agreement. This is a full and final release, and Vasquez acknowledges that she is familiar with California Civil Code § 1542, and further expressly waives any and all right under California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Although it is possible Vasquez may discover new or additional damages, injuries, or information, this release is intended to include all claims and potential claims against the Plaintiffs' Released Parties.

      b.    Defendants and their insurers hereby release and forever discharge one another (Sedgwick, Buchalter, and their respective insurers), Vasquez and her employees, attorneys, representatives, and agents of any kind (the "Defendants' Released Parties") from any and all claims of any kind, known or unknown, in law or equity, on any facts or theory whatsoever that have occurred prior to the date of this Agreement. Defendants and their insurers further hereby release and forever discharge Parvin, and Sedgwick and its insurers further hereby release and forever discharge Wance, from any and all claims of any kind, known or unknown, in law or equity, on any facts or theory whatsoever that have occurred prior to the date of this Agreement.

3558943.2

Page 5 of 13

These releases are a general release of all claims and potential claims. Defendants expressly acknowledge and agree that this release is intended to extinguish all claims of every type, including those known and unknown and those suspected and unsuspected, without regard to whether they are now known or suspected, even if those claims might have materially affected Defendants' decision to enter into this release or Agreement. This is a full and final release, and Defendants acknowledge that they are familiar with California Civil Code § 1542, and further expressly waives any and all right under California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Although it is possible Defendants may discover new or additional damages, injuries, or information, this release is intended to include all claims and potential claims against the Defendants' Released Parties.

10. *Contribution*: For avoidance of doubt, neither Wance nor Parvin are paying any amount whatsoever of the Settlement Amount or otherwise to Vasquez or the CBMWD. Defendants represent that their respective insurance carriers have agreed to the payment terms set forth in this Agreement. Defendants agree to confidentially disclose the identity of the insurance carriers in a separate confidential writing and Vazquez, her agents, and attorneys agree to maintain the confidentiality of this information.

11. *Mutual Drafting*: Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion. This Agreement shall be deemed to have been drafted equally by the parties and any rules of

construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Agreement.

12. *Complete Agreement*: This Agreement constitutes the complete agreement between the Parties. This Agreement shall prevail over any and all prior communications, agreements, or promises regarding the Claim or the matters addressed in the Agreement. This Agreement may not be amended except by written consent of the Parties.

13. *Non-Disparagement*. Other than statements made directly to the Court in connection with the approval of the Agreement or as may be required by law, the Parties agree that they and their attorneys will not disparage or otherwise comment negatively about any Plaintiff or any named defendant in the Claim, their employees, attorneys, representatives, or agents of any kind, including Parvin and Wance with respect to any conduct occurring before the Effective Date. The Parties acknowledge that the covenants contained in this paragraph are material provisions of the Agreement and that breach of this provision shall constitute a material breach of this Agreement. The Parties further acknowledge and expressly understand that this non-disparagement provision is valuable consideration for the other terms, promises and conditions contained in this Agreement, including, but not limited to, the consideration set forth in Paragraph 1 of this Agreement. In recognition that it would be impractical or extremely difficult to fix the actual damages that would result from a breach of this provision, the Parties agree that the Parties will be responsible for liquidated damages for breach of this non-disparagement provision of $10,000 per each prohibited disclosure as well as appropriate injunctive relief and all attorney's fees and costs reasonably incurred in the prosecution of the action for breach.

14.     *California Choice of Law*: This Agreement, and the rights, remedies, and obligations provided for hereunder, shall be construed and enforced in accordance with the laws of the State of California, without regard to choice of law principals.

15.     *Section Headings*:  Section headings contained herein are for purposes of organization only and shall not constitute part of this Agreement.

16.     *Authority to Sign*:  The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

17.     *Signatures in Counterparts*:  This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

## SIGNATORIES

DATED: 3/21/2019    BY: _____
Leticia Vasquez, *qui tam* Plaintiff

DATED: 3/2/19    BY: _____
Curtis Parvin, Chair of Dissolution
Committee, *on behalf of Sedgwick LLP*

DATED: 3/21/19    BY: _____
General Counsel, *on behalf of*
*Buchalter, A Professional Corporation*

## EXHIBIT 1

## THE CENTRAL BASIN MUNICIPAL WATER DISTRICT'S
## CONSENT TO DISMISSAL

I, _____, am the prosecuting authority of the Central Basin Municipal Water District and I am authorized by CBMWD to enter this Consent to Dismissal.

I am familiar with the allegations and evidence in the case captioned *Central Basin Municipal Water District, a Public Entity, ex rel. Leticia Vasquez Qui Tam Plaintiff v. Sedgwick, Detert, Moran & Arnold, LLP et. al.*, Los Angeles Superior Court, Case No. BC518653. I have reviewed the Settlement Agreement in this matter and conclude that the terms of the Settlement Agreement are in the best interests of the Central Basin Municipal Water District, the parties to the litigation, and the public. In my judgment as General Counsel of the Central Basin Municipal Water District, the Settlement Agreement is fair, adequate, and reasonable under all of the circumstances.

DATED: _____     BY: _____
                                                          Prosecuting authority, Central Basin
                                                          Municipal Water District



EXHIBIT 2

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CENTRAL BASIN MUNICIPAL WATER DISTRICT, A PUBLIC ENTITY, ex rel. LETICIA VASQUEZ QUI TAM PLAINTIFF,<br><br>Plaintiffs,<br><br>vs.<br><br>SEDGWICK, DETERT, MORAN & ARNOLD, LLP; BUCHALTER, a Prof. Corp.; DOUGLAS E. WANCE; CURTIS PARVIN; ART AGUILAR and DOES 1 to 50,<br><br>Defendants. | Case No. BC518653<br><br>**STIPULATION OF DISMISSAL OF DEFENDANTS; CONSENT OF THE CENTRAL BASIN MUNICIPAL WATER DISTRICT TO THE DISMISSAL PURSUANT TO GOV'T CODE § 12652(c)(1); AND ORDER THEREON**<br><br>Dept.: 52<br><br>Assigned to Hon. Susan Bryant-Deason, Dept. 52<br><br>Action Filed: August 16, 2013 |

The above-captioned action ("this Action") was brought by plaintiff and relator Leticia

Vasquez ("Vasquez") against Defendants (1) Sedgwick LLP, (2) Buchalter, A

Professional Corporation, (3) Curtis Parvin, and (4) Douglas Wance (collectively,

the "Defendants") under the *qui tam* provisions of the California False Claims Act

("CFCA"), Gov't Code § 12652, *et seq.*, for alleged substantive violations of, as

3558943.2

well as an alleged conspiracy to violate, the CFCA. (Vasquez and the Defendants are collectively referred to below as the "Parties.")

Pursuant to Gov't Code § 12652(c)(1) of the CFCA, and in accordance with the terms of the Parties' Settlement Agreement, the undersigned Parties hereby stipulate to the entry of an order dismissing all claims for relief in this action as to the Defendants. Such dismissal is with prejudice.

Except that the Parties stipulate that Vasquez does not dismiss her claims for a share to be paid by the Government pursuant to Gov't Code § 12652(g). As to this claim, Vasquez respectfully requests that the Court retain jurisdiction to determine, if necessary, Vasquez's share that she should obtain pursuant to Gov't Code § 12652(g).

The Parties further stipulate that any claim Vasquez or her counsel has for expenses, attorneys' fees, and costs shall not be the responsibility of the Defendants.

<u>CONSENT OF THE CENTRAL BASIN</u>
<u>MUNICIPAL WATER DISTICT TO DISMISSAL</u>

Pursuant to Gov't Code § 12652(c)(1), the prosecuting authority of the Central Basin Municipal Water District ("CBMWD"), by and through the undersigned, consents to the foregoing dismissal. The reason for the consent of the CBMWD is that this dismissal is pursuant to a settlement that is fair, adequate and reasonable.

<u>ORDER</u>

IT IS SO ORDERED



DATED: _____, 2019

By: _____
                     Hon. Susan Bryant-Deason


Case: 18-31087    Doc# 191    Filed: 03/28/19    Entered: 03/28/19 11:16:31    Page 20 of
26

# EXHIBIT B

**Parvin Declaration**

DOCS_SF:100418.2

# DECLARATION OF CURTIS D. PARVIN

I, Curtis D. Parvin, declare as follows:

1.    I am a member of the Dissolution Committee created by the Plan of Dissolution adopted as of December 2017, by Sedgwick, LLP, formerly known as Sedgwick Detert Moran & Arnold LLP, the above-captioned debtor and debtor-in-possession (the "Debtor").[1]  I am authorized to submit this declaration on behalf of the Debtor in support of the *Motion for Order Approving the Compromise of a Controversy Among the Debtor, Leticia Vasquez, Central Basin Municipal Water District, and Buchalter, a Professional Corporation* (the "Motion").   Except where indicated otherwise, I have personal knowledge of the facts set forth below, and if called to testify, I would testify competently thereto.

2.    The Debtor represented the Central Basin as legal counsel between approximately 2006 and 2013. In the course of the legal representation, the Debtor opened and administered a client trust account in the amount of $1,000,000.  Buchalter represented the Central Basin as legal counsel beginning in 2011.  In the course of the legal representation, Buchalter opened and administered a client trust account in the amount of $1,750,000.  Plaintiff alleged that Sedgwick and Buchalter opened and administered these respective client trust accounts without proper authority from Central Basin and without disclosure to the public.

3.    As to the Debtor, Vasquez argued that she should prevail because, she claimed, no written records showed clear authorization from Central Basin or its board to open the trust fund, use the trust fund in furtherance of litigation, or to issue payments from the trust fund.  Vasquez further argued she should prevail because none of the Central Basin members recalled authorizing the trust fund in connection with litigation and all of them testified they would not have opened the fund in a "closed" (*i.e.*, non-public) session if they had not been advised to do so by the Debtor.

4.    The Debtor expected it would prevail because various statutory provisions of the California False Claims Act barred recovery, including what are known as the "public disclosure" and "public employee" bars.  The Debtor also expected to prevail because Central Basin's board had

---

[1]  Capitalized terms not defined herein have the meanings used in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

approved the establishment of the trust account as confirmed by a board member and general manager and because the Debtor it maintained full records showing that Central Basin's highest non-elected official granted written approval for each payment from the Debtor's trust account.

5.    The Debtor and Buchalter, on the one hand, and Vasquez and Central Basin on the other have decided to settle the controversy among them to avoid the cost, inconvenience, delays, and uncertainties involved in further legal proceedings. The compromise reached between the parties is documented in the Settlement Agreement. As set forth more fully in the Settlement Agreement, the Parties have agreed that the Debtor's and Buchalter's insurers shall pay Central Basin $2,250,000 upon the approval by: Central Basin and its prosecuting attorney, the state court presiding over the Central Basin action, and this Court. In addition, the Parties will release any other claims against the other as set forth in the Settlement Agreement.

6.    I believe that the Settlement Agreement was entered into in good faith and represents a fair bargain for the Debtor's estate as well as its general unsecured creditors because the Debtor is not required to pay any portion of the claim and the settlement reduces or eliminates claims against the estate. The Settlement Agreement will avoid unnecessary and protracted litigation involving two causes of action pursuant to the California False Claims Act, Gov. Code § 12650 *et. seq.* The expeditious resolution of the Parties' claims by way of payment made by insurers greatly outweigh the release given by the Debtor.

7.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: March 28, 2019                    By: _____
        Costa Mesa, California                 Curtis D. Parvin
                                               Dissolution Committee Member

2

# EXHIBIT C

**Proposed Order**

1  John W. Lucas (CA Bar No. 271038)
   Jason H. Rosell (CA Bar No. 269126)
2  Pachulski Stang Ziehl & Jones LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111-4500
   Telephone:   415.263.7000
4  Facsimile:   415.263.7010
   Email:       jlucas@pszjlaw.com
5               jrosell@pszjlaw.com

6  Attorneys for Debtor

7

8                UNITED STATES BANKRUPTCY COURT
                 NORTHERN DISTRICT OF CALIFORNIA
9                    SAN FRANCISCO DIVISION

10 In re:                              Case No.: 18-31087 (HLB)

11     SEDGWICK, LLP,                  Chapter 11

12                Debtor.              **ORDER APPROVING THE COMPROMISE
                                       OF A CONTROVERSY AMONG THE
13                                     DEBTOR, LETICIA VASQUEZ, CENTRAL
                                       BASIN MUNICIPAL WATER DISTRICT,
14                                     AND BUCHALTER, A PROFESSIONAL
                                       CORPORATION**

15

16         This matter came before the Court on the *Motion for Order Approving the Compromise of a*

17 *Controversy Among the Debtor, Leticia Vasquez, Central Basin Municipal Water District, and*

18 *Buchalter, a Professional Corporation* [Docket No. __] (the "<u>Motion</u>")[2] filed by the above-captioned

19 debtor and debtor in possession (the "<u>Debtor</u>").  The Court having reviewed the Motion and the

20 declaration of Curtis D. Parvin filed in support thereof and finding that notice of the Motion was

21 reasonable and appropriate under the circumstances, that the relief requested in the Motion is in the

22 best interest of the Debtor's estate and its creditors; and the Court having determined that the legal

23 and factual bases set forth in the Motion establish just cause for the relief granted herein;

24         **IT IS HEREBY ORDERED THAT**:

25         1.      The Motion is **GRANTED**.

26         2.      The Settlement Agreement is approved and incorporated into this Order and the

27 Debtor, Vasquez, Central Basin, and Buchalter are authorized to take any and all actions as may be

28

---

[2] Capitalized terms not defined herein have the meanings used in the Motion.

DOCS_SF:100418.2

1    necessary to implement the terms of the Settlement Agreement.

2            3.      This Court shall retain jurisdiction over all matters arising from or related to the

3    Settlement Agreement or the implementation of this Order.

4                                    **END OF ORDER**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28