Cecily A. Dumas (SBN 111449)
Lauren T. Attard (SBN 320898)
Elizabeth A. Green (SBN 0600547) *Pro Hac Vice*
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone: 628.208.6434
Facsimile: 310.820.8859
Email: cdumas@bakerlaw.com
Email: lattard@bakerlaw.com
Email: egreen@bakerlaw.com

Proposed Counsel to the
Official Committee of Unsecured Creditors

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>SEDGWICK LLP<br><br>Debtor. | Case No.: 18-31087 (HLB)<br><br>CHAPTER 11<br><br>**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER APPROVING COMPROMISE WITH GRM INFORMATION MANAGEMENT SERVICES**<br><br>**Hearing Date:**<br>Date: April 3, 2019<br>Time: 3:30 p.m.<br>Place: U.S. Bankruptcy Court<br>450 Golden Gate Ave., 16th Fl.<br>Courtroom 19<br>San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

The Official Committee of Unsecured Creditors (the "**Committee**") of Sedgwick LLP ("**Sedgwick**" or the "**Debtor**") appointed in the above-captioned bankruptcy case (the "**Bankruptcy Case**") hereby objects (the "**Objection**") to the Debtor's *Motion for Order Approving the Compromise of a Controversy Among the Debtor and GRM Information*

*Management Services* (the "**Motion**") [Docket No. 164]. In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor seeks approval of a compromise with creditor GRM Information Management Services ("**GRM**"). The Debtor proposes to pay GRM an amount "not to exceed" $775,000. This amount is purportedly payment to GRM for the offsite storage and retrieval of the Debtor's client files ("**Client Files**"). The Debtor asserts that the proposed settlement is approximately a 50% discount from the claim GRM could assert in the amount of approximately $1.35 million. The Debtor has provided the Committee with a spreadsheet quantifying this potential claim. The potential claim is comprised of alternatively approximately $1.329 million in "access, destruction, and reimbursement" charges or approximately $1.350 million in "access, 'permout,' and reimbursement charges." GRM has only filed a proof of claim in the amount $85,788.81. GRM has not filed an administrative claim.

2. The proposed compromise is not in the best interest of the bankruptcy estate and fails to meet the requisite standards for approval of a Rule 9019 motion. The proposed payment will significantly risk that the estate becomes administratively insolvent. The Debtor has failed to carry its burden of proving that GRM would be entitled to an administrative claim equal to $1.35 million, or even $775,000, and GRM has not filed any administrative claim. GRM is impermissibly refusing to release the Client Files to the clients unless the Court approves the proposed settlement. GRM asserts it holds a warehouse lien under UCC § 7-209 in confidential client personal, financial, and health data. However, GRM either does not have a valid lien in the Client Files or its lien has no value. GRM cannot foreclose upon the Client Files, liquidate the Client Files, or otherwise recover any proceeds from foreclosure of any asserted lien. GRM cannot sell the Client Files with confidential client personal, financial, and health data to any purchaser. GRM is either an unsecured creditor with no valid lien or its lien has no value. GRM is not entitled to payment that far exceeds its filed proof of claim amount and unasserted administrative claim.

# BACKGROUND

3. On October 2, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued to manage its assets and operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

4. On October 10, 2018, the Office of the United States Trustee appointed the Committee [Docket No. 37]. The members of the Committee are: (i) BMO Harris Bank; (ii) CPF 801 Tower LLC; and (iii) One North Wacker Drive LLC.

5. On October 31, 2018, the Debtor filed its *Motion for Approval of Settlement Procedures for Compromising Accounts Receivable* ("**Settlement Procedures Motion**") [Docket No. 81]. On November 8, 2018, the Court entered an order approving the Settlement Procedures Motion [Docket No. 90].

6. On November 13, 2018, the Debtor filed its *Motion and Memorandum of Points and Authorities in Support of Motion for Approval of Client File Disposition Procedures* ("**File Disposition Motion**") [Docket No. 98]. On December 4, 2018, the Court entered an order approving the File Disposition Motion [Docket No. 112].

# OBJECTION

7. Bankruptcy Rule 9019(a) permits a debtor-in-possession to seek approval of a settlement or compromise. Fed. R. Bankr. P. 9019(a). Before approving a proposed settlement, the Court must conduct a balancing test to determine if the proposal is in the best interest of the bankruptcy estate. *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). In determining whether to approve a proposed compromise, the court must consider: "(a) the probability of success in the litigation, (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.*

8. The Debtor asserts that the proposed settlement passes the *A&C Properties*' test. However, the Debtor does not argue that GRM would prevail on the merits of its claim. Instead,

1  the Debtor asserts that (a) it would have to argue that GRM did not provide benefit to the estate
2  because the Client Files have no value to the estate; (b) the Debtor would have to incur legal fees
3  opposing GRM's motion for an administrative claim; (c) the Debtor would have to determine its
4  obligations under various applicable state law "in the context of confidential client files and the
5  duties the Debtor has or had to former clients"; and (d) there is an inherent risk to litigation. Motion,
6  p. 8. The Debtor fails to even argue, let alone carry, its burden to establish the first element of the
7  A&C Properties' Rule 9019(a) test, i.e., that GRM would prevail on the merits of its claim.

8      9.    GRM has not filed an administrative claim. The Debtor has provided a computation
9  to the Committee that estimates a potential claim for GRM in the amount of approximately $1.35
10  million. However, there are disputed fact issues over how GRM would be entitled to $1.35 million,
11  or even $775,000 on an administrative claim for storage of client files when the Debtor asserts the
12  monthly storage costs are approximately $35,000 per month. The Debtor cannot carry its burden
13  of proving GRM's potential administrative claim, and the relevant "discount" obtained from the
14  proposed settlement, when GRM has not even filed an administrative claim, documented the basis
15  for such claim, or identified its entitlement to one.

16      10.    GRM could not prevail on the merits of its claim that it is a secured creditor because
17  GRM cannot hold a lien in confidential attorney-client files. Client files contain the clients'
18  confidential personal, financial, and health data, including social security numbers, account
19  numbers and transactions, and other protected data. GRM cannot foreclose any lien in Client Files,
20  because it could not sell the Client Files to any third party, or otherwise utilize them for them any
21  commercial purpose. To the extent GRM has a valid lien in the actual paper, the lien is worthless.

22      11.    While GRM asserts a lien under Article 7 of the Uniform Commercial Code, GRM
23  does not identify which state's material lien statute applies. Regardless, there is no authority that
24  a warehouse or storage lien would be valid in confidential personal, financial, and health data of
25  attorney clients, or that GRM could foreclose or liquidate its lien without impermissibly damaging
26  the clients themselves.

12. It is axiomatic that the attorney-client privilege confers upon the client an expectation of privacy in his or her confidential communications with the attorney. *DeMassa v. Nunez*, 770 F.2d 1505, 1506 (9th Cir. 1985):

> Neither the State of California, where the search took place, Congress nor the federal courts dispute this hornbook rule. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Darrow v. Gunn*, 594 F.2d 767, 774–75 (9th Cir.), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Landof*, 591 F.2d 36, 38 (9th Cir.1978) (citing 8 Wigmore, Evidence, § 2292 (McNaughton Rev.1961)); *United States v. Friedman*, 445 F.2d 1076, 1085 (9th Cir.), *cert. denied* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971); Cal.Evid.Code §§ 952, 954; Fed.R.Evid. 501 (incorporating common law principles of privilege). In fact, courts and legislatures explicitly espouse this axiom. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960–61 (3rd Cir.1984) (citing Model Rules of Professional Conduct Rule 1.6 (1983) and Model Code of Professional Responsibility DR 4–101 (1980)); *United States v. Medows*, 540 F.Supp. 490, 499 n. 35 (S.D.N.Y.1982) ("Of course, the Court recognizes that [the lawyer's] clients have an interest in the privacy of their files."); *Law Offices of Bernard D. Morley v. MacFarlane*, 647 P.2d 1215, 1222 (Colo.1982) ("there is an enhanced privacy interest underlying the attorney-client relationship which warrants a heightened degree of judicial protection and supervision when law offices are the subject of a search for client files or documents"); Privacy Protection Act, 42 U.S.C. §§ 2000aa–11(a)(3) (the Attorney General must recognize "special concern for privacy interests in cases in which a search or seizure for such documents could intrude upon a known confidential relationship such as that which may exist between ... lawyer and client").

GRM cannot prevail in proving a valid secured claim in the Client Files.

13. The Debtor concedes that the second element of the *A&C Properties'* test, i.e., the difficulties of collection, favors denying the Motion: "The Debtor acknowledges that there would be minimal difficulty of collection if the Debtor is the prevailing party because the result would be a disallowed claim. Objection, p. 8. The Debtor adds that because the estate would expend fees in objecting to GRM's claim it would "reduce" the recovery to general unsecured creditors. *Id.* At pp. 8-9. However, allowance of a payment of $775,000 to GRM would far exceed any reduction to distribution to general unsecured creditors caused by expending fees objecting to GRM's secured claim. Particularly since GRM would have no basis to assert a valid lien. *See also* 11 U.S.C. § 506(c) (allowed secured claim limited to the value of the creditor's interest in the collateral). The second element of the *A&C Properties*' test further favors denial of the Motion.

14. The Debtor argues that the proposed settlement satisfies the third prong of the *A&C Properties*' test, i.e., based on the complexity of the litigation, and the expense, inconvenience, and delay necessarily attending it. Motion, p. 9. However, the litigation would not be complex, expensive, inconvenient, or slow. GRM has not legal basis to assert a lien in the Client Files, or alternatively, no ability to prove that any valid lien has any value. GRM cannot foreclose on any lien in the Client Files. Selling the Client Files with confidential personal, financial, and health data pursuant to foreclosure would violate the protected privacy interests of the clients. Given that GRM cannot prove a legitimate secured claim of any value, any litigation objecting to GRM's secured claim would be simple, inexpensive, and quick.

15. Lastly, the Debtor asserts that the settlement agreement serves the interests of creditors. Motion, p. 9. "[T]he Settlement Agreement will avoid unnecessary and potentially protracted litigation, reduce the potential pool of general unsecured claims, and effectively cap a significant expense related to administering this chapter 11 case." *Id.* However, the settlement agreement is not in the best interest of the creditors or the estate.

    a. The settlement would significantly risk the estate becoming administratively insolvent. The Debtor's January 2019 Operating Report indicates the estate has less than $2.1 million in cash or cash equivalents. [Docket No. 163, p. 3]. The estate has accrued, unpaid professional fees of approximately $775,000. *Id.,* p. 2. Payment of $775,000 to

GRM will leave the estate with less than $600,000 for administrative expenses accruing since January 2019. The estate needs to remain administratively solvent to enable the estate to pursue claims against the former partners of the Debtor. Utilizing the estate's administrative solvency to pursue recoveries that will increase the estate's assets and increase the distribution to creditors better serves the best interest of the estate.

  b. To the extent GRM holds a lien at all, the Debtor was never entitled to grant a lien in the Client Files. The confidential personal, financial, and health data in the Client Files remains property of the clients. The Debtor, in its capacity as attorney for its clients, never acquired or owned its clients' confidential personal data, and had no right or ability to grant GRM a lien in such data.

  c. The proposed settlement does not benefit the estate in any way. The storage and disposition of the Client Files is a dispute between the clients and GRM. GRM is refusing to release files to clients until it obtains approval of the proposed Settlement. GRM's improper attempt to leverage a payment to allow the clients to retrieve their confidential personal, financial, and health data is contrary to the best interests of the estate. The Debtor's clients entrusted their confidential data to the Debtor and its attorneys. Approving the settlement would only validate GRM's improper conversion of the Client Files as a means of coercing payment.

  d. Given that GRM cannot prove it holds a lien in the Client Files, paying GRM as if it is secured in collateral worth at least $775,000 is baseless.

The proposed settlement is contrary to the best interest of the general unsecured creditors, will risk rendering the estate insolvent and will hamper the estate's ability to recover additional assets for distribution, will significantly diminish the funds available to creditors, and will significantly diminish their percentage and amount of recovery. The Debtor fails to carry its burden of proving any of the *A&C Properties*' elements. The proposed settlement only benefits GRM and does so to the significant detriment of the estate and the general unsecured creditors.

7

Case 18-31087 Doc# 197 Filed: 03/28/19 Entered: 03/28/19 16:22:34 Page 7 of 8

4814-7328-9872.1

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court (1) deny the Debtor's Motion, and (2) grant such other and further relief as the Court may deem just and proper.

Dated: March 28, 2019

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Lauren T. Attard*
Cecily A. Dumas
Lauren T. Attard
Elizabeth A. Green (*Pro Hac Vice*)

Proposed Counsel for the Official Committee of Unsecured Creditors