1    John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
2    Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
3    San Francisco, California 94111-4500
Telephone:    415.263.7000
4    Facsimile:    415.263.7010
Email:      jlucas@pszjlaw.com
5            jrosell@pszjlaw.com

6    Attorneys for Sedgwick, LLP

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 18-31087 (HLB) |
| **SEDGWICK, LLP,** | Chapter 11 |
| Debtor. | **PLAN OF LIQUIDATION OF SEDGWICK, LLP** |
| | **Confirmation Hearing** |
| | Date: _____, 2019 |
| | Time: \_\_:\_0 \_.m. (Pacific Time) |
| | Place: U.S. Bankruptcy Court |
| | 450 Golden Gate Avenue, Courtroom 19 |
| | San Francisco, CA |
| | Judge: Hon. Hannah L. Blumenstiel |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

## Contents

ARTICLE I DEFINITIONS ................................................................................................................ 2

1.1 "Accounts Receivable" ...................................................................................................... 3
1.2 "Administrative Claim" ...................................................................................................... 3
1.3 "Administrative Claims Bar Date" ..................................................................................... 3
1.4 "Allowed" ........................................................................................................................... 3
1.5 "Allowed Unsecured Claim" .............................................................................................. 4
1.6 "Available Cash" ................................................................................................................ 4
1.7 "Avoidance Actions" ......................................................................................................... 4
1.8 "Ballot" ............................................................................................................................... 4
1.9 "Bankruptcy Code" ............................................................................................................ 4
1.10 "Bankruptcy Court" or "Court" ......................................................................................... 4
1.11 "Bankruptcy Rules" ........................................................................................................... 4
1.12 "Bar Date" .......................................................................................................................... 5
1.13 "Business Day" ................................................................................................................... 5
1.14 "Cash" ................................................................................................................................. 5
1.15 "Chapter 11 Case" .............................................................................................................. 5
1.16 "Claim" ............................................................................................................................... 5
1.17 "Claimant" .......................................................................................................................... 5
1.18 "Claims Reserve Account" ................................................................................................. 5
1.19 "Class" ................................................................................................................................ 5
1.20 "Committee" ....................................................................................................................... 5
1.21 "Confirmation" ................................................................................................................... 6
1.22 "Confirmation Date" .......................................................................................................... 6
1.23 "Confirmation Hearing" ..................................................................................................... 6
1.24 "Confirmation Order" ........................................................................................................ 6
1.25 "Creditor" ........................................................................................................................... 6
1.26 "Debt" ................................................................................................................................. 6
1.27 "Debtor" .............................................................................................................................. 6
1.28 "Disallowed Claim" ........................................................................................................... 6
1.29 "Disclosure Statement" ...................................................................................................... 6
1.30 "Dissolution Committee" ................................................................................................... 7
1.31 "Disputed Claim" ............................................................................................................... 7
1.32 "Disputed Claims Amount" ............................................................................................... 7
1.33 "Effective Date" ................................................................................................................. 7
1.34 "Estate" ............................................................................................................................... 7
1.35 "Estate Assets" ................................................................................................................... 7
1.36 "Exculpated Parties" .......................................................................................................... 7
1.37 "Executory Contracts" ....................................................................................................... 8
1.38 "Final Order" ...................................................................................................................... 8
1.39 "Former Equity Partners" ................................................................................................... 8
1.40 "Former Equity Partner Settlement Motion" ..................................................................... 8
1.41 "Former Equity Partner Settlement Payments" .................................................................. 8
1.42 "Former Settling Equity Partners" ..................................................................................... 8
1.43 "Insurance Deductible" ...................................................................................................... 8
1.44 "Insured Malpractice Claim" ............................................................................................. 8
1.45 "Insured Portion" ......................................................................................**Error! Bookmark not defined.**
1.46 "Interest Holder" ................................................................................................................ 9
1.47 "Interests" ........................................................................................................................... 9
1.48 "Lien" .................................................................................................................................. 9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | | |
|---|---|---|
| 1.49 | "Liquidating Debtor" | 9 |
| 1.50 | "Malpractice Claim" | **Error! Bookmark not defined.** |
| 1.51 | "Malpractice Claim Expenses" | **Error! Bookmark not defined.** |
| 1.52 | "Malpractice Policy" or "Policies" | 9 |
| 1.53 | "Net Available Cash" | 9 |
| 1.54 | "Non-Settling Former Equity Partner" | 9 |
| 1.55 | "Oversight Committee" | 9 |
| 1.56 | "Petition Date" | 9 |
| 1.57 | "Plan" | 10 |
| 1.58 | "Plan Administrator" | 10 |
| 1.59 | "Plan Expenses" | 10 |
| 1.60 | "Plan of Dissolution" | 10 |
| 1.61 | "Post-Confirmation Motion and Opportunity for Hearing" | 10 |
| 1.62 | "Post-Confirmation Service List" | 11 |
| 1.63 | "Priority Tax Claim" | 11 |
| 1.64 | "Professional Fees" | 11 |
| 1.65 | "Professionals" | 11 |
| 1.66 | "Pro Rata" or "Pro Rata Share" | 11 |
| 1.67 | "Rejected Contract(s)" | 11 |
| 1.68 | "Rejection Claim" | 11 |
| 1.69 | "Rejection Claim Bar Date" | 11 |
| 1.70 | "Reserved Claims" | 12 |
| 1.71 | "Reserved Claims Pool" | 12 |
| 1.72 | "Reserved Claims Pool Account" | 12 |
| 1.73 | "Retained Claims and Defenses" | 12 |
| 1.74 | "Schedules" | 12 |
| 1.75 | "Secured Claim" | 12 |
| 1.76 | "Sedgwick Released Claims" | 13 |
| 1.77 | "U.K. LLP" | 13 |
| 1.78 | "U.K. LLP Equity" means the equity in the U.K. LLP that is owned by the Debtor | 13 |
| 1.79 | "Unliquidated Claim" | 13 |
| 1.80 | "Unsecured Claim" | 13 |

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ............................................. 13

| | | |
|---|---|---|
| 2.1 | Criterion of Class. | 13 |
| 2.2 | Classes of Claims and Interests. | 13 |
| | 2.2.1 Class 1 Claims. | 13 |
| | 2.2.2 Class 2 Claims. | 14 |
| | 2.2.3 Class 3 Interests. | 14 |

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS .............................................. 14

| | | |
|---|---|---|
| 3.1 | Administrative Claims. | 14 |
| 3.2 | Administrative Claim Bar Date. | 14 |
| 3.3 | Claims for Professional Fees. | 15 |
| 3.4 | Priority Tax Claims. | 15 |

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........................... 15

| | | |
|---|---|---|
| 4.1 | Class 1 Claims (Insured Malpractice Claims). | 15 |
| 4.2 | Class 2 (General Unsecured Claims). | 16 |
| 4.3 | Class 3 (Interests). | 16 |
| 4.4 | Nonconsensual Confirmation. | 17 |
| | 4.4.1 Class 3 Cramdown. | 17 |

DOCS_SF:101282.2 77998/002

PLAN OF LIQUIDATION

ii

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN .................................................. 17

5.1    Effective Date Transactions. ................................................................................. 17
5.2    Revesting of Estate Assets. .................................................................................. 18
5.3    Replacement of Dissolution Committee/Continued Existence. ........................... 18
5.4    Management of Liquidating Debtor by Plan Administrator. ................................. 18
5.5    Continued Business of Liquidating Debtor. ......................................................... 19
5.6    Retained Claims and Defenses. ............................................................................ 19
       5.6.1    Bankruptcy Rule 2004. .......................................................................... 19
       5.6.2    Standing. ................................................................................................. 19
5.7    Avoidance Actions. .............................................................................................. 20
5.8    Claims Reserve Account. ..................................................................................... 20
5.9    Liquidating Debtor Liquidation Budget. ............................................................. 20
5.10   Limitation of Liability of Plan Administrator and the Oversight Committee. .................... 21
5.11   Dissolution of Committee .................................................................................... 21
5.12   Powers of the Oversight Committee. ................................................................... 22
5.13   Material Default Under the Plan. ......................................................................... 22
5.14   Payment of Plan Expenses. .................................................................................. 23
5.15   Distribution Procedures. ...................................................................................... 23
5.16   Resolution of Disputed Claims ............................................................................ 24
5.17   Reserve Provisions for Disputed Claims. ............................................................ 24
5.18   Allocation of Distributions. ................................................................................. 26
5.19   Rounding. ............................................................................................................. 26
5.20   De Minimis Distributions. .................................................................................... 26
5.21   Disputed Payments. .............................................................................................. 26
5.22   Unclaimed Property. ............................................................................................. 27
5.23   Malpractice Policies Remain In Force ................................................................. 27
5.24   Successor Plan Administrator. ............................................................................. 28
5.25   Setoffs. ................................................................................................................. 28
5.26   No Distributions on Late-Filed Claims. .............................................................. 28
5.27   Withholding Taxes. .............................................................................................. 28
5.28   Post-Effective Date Reports. ............................................................................... 28
5.29   Post-Effective Date Employment and Compensation of Professionals. ............. 29
5.30   Final Decree. ........................................................................................................ 29
5.31   Procedures for Post-Confirmation Motion and Opportunity for Hearing. .......... 30

ARTICLE VI EXECUTORY CONTRACTS ...................................................................... 30

6.1    Executory Contracts. ............................................................................................ 30
       6.1.1    Assumption. ............................................................................................ 30
       6.1.2    Rejection. ................................................................................................ 30
6.2    Satisfaction of Cure Obligations. ........................................................................ 31
6.3    Post-Petition Executory Contracts and Unexpired Leases. ................................. 31
6.4    Order Authorizing Assumption or Rejection. ...................................................... 31

ARTICLE VII CONDITIONS PRECEDENT ...................................................................... 32

7.1    Conditions to Confirmation. ................................................................................ 32
7.2    Conditions to Effective Date. .............................................................................. 32

ARTICLE VIII EFFECTS OF CONFIRMATION ............................................................... 32

8.1    Binding Effect of Plan. ........................................................................................ 32
8.2    Revesting of Property Free and Clear. ................................................................. 33
8.3    Injunction. ............................................................................................................ 33
8.4    Limitation of Liability. ........................................................................................ 33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

ARTICLE IX RETENTION OF JURISDICTION ..................................................................... 34

ARTICLE X MISCELLANEOUS ............................................................................................ 36

10.1   Severability of Plan Provisions. .......................................................... 36
10.2   Governing Law. .................................................................................... 36
10.3   Headings. .............................................................................................. 36
10.4   Language Interpretation. ...................................................................... 37
10.5   Exhibits. ............................................................................................... 37
10.6   Exemption from Transfer Taxes: ......................................................... 37
10.7   Notices. ................................................................................................ 37
10.8   Computation of Time Periods. ............................................................. 38
10.9   Defects, Omissions and Amendments. ................................................. 38
10.10  Filing of Additional Documents. ......................................................... 38
10.11  Successors and Assigns. ....................................................................... 39
10.12  Implementation. ................................................................................... 39
10.13  Certain Actions. ................................................................................... 39
10.14  Waiver of Fourteen (14) Day Stay. ...................................................... 39

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**Exhibits**

Exhibit A          Assumed Contracts

Exhibit B          Former Equity Partners

Exhibit C          Former Settling Equity Partner

Exhibit D          Malpractice Policies

Exhibit E          Non-Settling Former Equity Partners

Exhibit F          Plan Administrator Curriculum Vitae

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Sedgwick LLP, the above-referenced debtor and debtor in possession, hereby proposes the following *Plan of Liquidation* (the "Plan"). All Creditors should review the Disclosure Statement, and its accompanying exhibits and other information, before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Claims and Interests against or in the Debtor. In sum, the Plan provides for the Debtor to continue its wind-down efforts after confirmation with its administration to be handled by the Plan Administrator replacing the Dissolution Committee as the primarily responsible party. Confirmation of the Plan shall constitute and confirm the appointment of the Plan Administrator, including responsibility and authority to (a) exercise the rights, power, and authority of the Liquidating Debtor, under the applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (b) retain post-confirmation professionals to represent the Liquidating Debtor and assist the Plan Administrator in performing and implementing the Plan, including without limitation retaining professionals originally engaged by the Debtor and/or the Committee, and (c) otherwise implement the Plan, wind up the affairs of the Estate and close the Chapter 11 Case.

The Plan contemplates the liquidation of all Estate Assets for the benefit of the holders of Allowed Claims and Allowed Interests, if any. The resulting funds, after payment of Plan Expenses, will be made available for distribution to holders of Allowed Claims and Allowed Interests, if any, in accordance with the terms of the Plan. The Plan Administrator's operation of the Liquidating Debtor will be for the purpose of liquidating and monetizing Estate Assets, which consist primarily of the Accounts Receivables, Retained Claims, and Defenses.

From and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall expeditiously seek to collect, liquidate, sell and/or reduce to Cash all Estate Assets, including, without limitation, through pursuit of the Accounts Receivables, Retained Claims, and Defenses, and use the proceeds thereof and the existing cash on hand to fund the Plan.

As set forth in the Disclosure Statement, the Debtor believes that the Plan will allow the holders of Unsecured Claims to receive a meaningful return on account of their Allowed Claims

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

against the Debtor, which in part will depend upon the collection of outstanding Accounts Receivables, the outcome of litigation of Retained Claims, and the ultimate allowance of Claims.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, and a Disclosure Statement that provides information concerning the Debtor and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Interest Holders will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that it meets the applicable legal standards before the Plan can be confirmed. If the Plan is not confirmed, the Debtor or other parties in interest may propose a different plan or the Bankruptcy Court may order the case dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

For the reasons set forth in the Disclosure Statement, the Debtor believes the Plan provides the best mechanism available for maximizing returns to Creditors and urges Creditors to vote to accept the Plan.

**ARTICLE I**

**DEFINITIONS**

For purposes of this Plan, all capitalized terms used herein and not otherwise defined shall have the meanings set forth below. A term not defined in the Plan, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, unless the context clearly requires otherwise. The rules of construction used in section 102 of the Bankruptcy Code shall apply to construction of this Plan. The phrase "as soon as practicable" shall mean within fourteen (14) days of the relevant date. Headings and captions are utilized in this Plan for convenient reference only, and shall not constitute a part of this Plan for any other purpose.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.1 **"Accounts Receivable"** means the outstanding invoices, claims, and any receivable owed to the Debtor from a former client.

1.2 **"Administrative Claim"** shall mean a Claim for an expense of administration of the Debtor arising during the period commencing on the Petition Date and ending on the Effective Date under sections 503(b), 1114(e)(2) or 546(c)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary cost or expense of preserving the Estate of the Debtor or conducting the business of the Debtor, (ii) administrative expenses previously allowed by the Bankruptcy Court, (iii) administrative claims that are timely filed prior to the applicable Administrative Claims Bar Date, (iv) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date, (v) Professional Fees, and (vi) all fees and charges assessed against the Debtor pursuant to 28 U.S.C. § 1930.

1.3 **"Administrative Claims Bar Date"** shall mean the first Business Day that is thirty-five (35) days after the Effective Date pursuant to which Claimants must file a request for payment of any Administrative Claim that arose between October 2, 2018 and the Effective Date, for which notice shall be provided in the Debtor's notice of the entry of the Confirmation Order.

1.4 **"Allowed"** shall mean, with respect to any Claim (other than an Administrative Claim as set forth below):

    (i) a Claim that appears in the Schedules, except a Claim that is listed as disputed, contingent or unliquidated, or for which a contrary proof of Claim has been filed;

    (ii) a Claim for which a proof of Claim has been timely filed as of the Bar Date or Rejection Claim Bar Date, as applicable, and no objection thereto has been made on or before any applicable deadline; or

    (iii) a Claim that has been allowed, but only to the extent allowed (i) by a Final Order, (ii) under this Plan, or (iii) under any agreements entered into prior to the Effective Date (and approved by the Bankruptcy Court) or in connection with this Plan (and approved in accordance with the terms of this Plan) establishing the amount and nature of any Claim; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

With respect to an Administrative Claim, a request for payment that has been filed prior to the Administrative Claims Bar Date, and in accordance with either section 503(b) of the Bankruptcy Code or the procedures for filing requests for payment of an expense of administration set forth in the Administrative Claims Bar Date Order, and as to which either no objection has been made on or before any applicable deadline, or if an objection has been made, a claim has been allowed by Final Order.

1.5 **"Allowed Unsecured Claim"** shall mean any Allowed Claim (including any Rejection Claim) that is not an Allowed Administrative Claim, an Allowed Professional Fee Claim, an Allowed Secured Claim, an Insured Malpractice Claim, an Allowed Priority Tax Claim or an Assumed Obligation.

1.6 **"Available Cash"** shall mean, with respect to any distribution contemplated herein, the aggregate amount of all Cash held by the Liquidating Debtor immediately prior to such distribution.

1.7 **"Avoidance Actions"** shall mean all claims or causes of action of the Debtor arising under sections 542, 543, 544, 545, 547, and 548 of the Bankruptcy Code.

1.8 **"Ballot"** shall mean the form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court and which shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).

1.9 **"Bankruptcy Code"** shall mean title 11 of the United States Code, §§ 101 *et seq.*, as in effect on the Petition Date, as the same thereafter has been and may be amended, provided such amendments are in effect.

1.10 **"Bankruptcy Court" or "Court"** shall mean the United States Bankruptcy Court for the Northern District of California (San Francisco Division), or such other court as may hereafter exercise jurisdiction over the Chapter 11 Case.

1.11 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as in effect on the Filing Date, as the same thereafter has been and may be amended, and the Local Rules of the Bankruptcy Court to the extent applicable to the Chapter 11 Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.12  **"Bar Date"** shall mean, as applicable, (i) January 22, 2019, which was the date set by the Bankruptcy Court as the last date for filing a proof of Claim for a Claim that arose before the Petition Date for non-Governmental Units, (ii) March 31, 2019 for Governmental Units; and (iii) any other date set by the Bankruptcy Court.

1.13  **"Business Day"** shall mean any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by any federal, state or local law to be closed in the City of San Francisco, California.

1.14  **"Cash"** shall mean cash and cash equivalents including, but not limited to, cash on deposit in the bank accounts of the Debtor or the Liquidating Debtor, as applicable, checks, wire transfers, money orders, certificates of deposit, money market or similar investments, and other similar readily marketable securities or instruments.

1.15  **"Chapter 11 Case"** shall mean the chapter 11 case commenced by the Debtor upon the filing with the Bankruptcy Court of a voluntary petition under chapter 11 of the Bankruptcy Code and having the Case No.:  18-31087 (HLB).

1.16  **"Claim"** shall mean a claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code.

1.17  **"Claimant"** shall mean the holder of a Claim.

1.18  **"Claims Reserve Account"** shall mean an interest bearing bank account or money market account to be established and held in trust for the benefit of holders of Allowed Unsecured Claims by the Liquidating Debtor on or after the Effective Date for the purpose of holding the funds to be distributed under the Plan to Unsecured Creditors and for Plan Expenses, and any interest, dividends or other income earned upon the investments in such account.

1.19  **"Class"** shall mean a category or group of Creditors or Interest Holders that are substantially similar to the Claims or Interests of the other Creditors or Interests Holders in such Class, as designated by this Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

1.20  **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtor's Chapter 11 Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.21 **"Confirmation"** shall mean the approval of the Plan by and subject to the terms of the Confirmation Order.

1.22 **"Confirmation Date"** shall mean the date of Confirmation.

1.23 **"Confirmation Hearing"** shall mean the duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

1.24 **"Confirmation Order"** shall mean the order of the Bankruptcy Court, confirming this Plan and providing for the effectuation of the transactions contemplated by this Plan in accordance with the terms and provisions hereof and thereof.

1.25 **"Creditor"** shall mean any entity that holds a Claim.

1.26 **"Debt"** shall mean liability on a Claim.

1.27 **"Debtor"** shall mean Sedgwick, LLP, as debtor and debtor in possession in the Chapter 11 Case.

1.28 **"Disallowed Claim"** shall mean (i) a Claim or any portion thereof, that has been disallowed by a Final Order of the Bankruptcy Court; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

1.29 **"Disclosure Statement"** shall mean the disclosure statement in support of the Plan, in the form approved by the Bankruptcy Court, disseminated by the Debtor to the holders of Claims against the Debtor to provide to such holders of Claims adequate information in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be modified, amended, or supplemented from time to time.

1.30 **"Dissolution Committee"** shall mean the committee formed under the Plan of Dissolution for the purpose of governing the affairs of the Debtor after December 31, 2017, whose members currently include Curtis D. Parvin, Bruce D. Celebrezze, and Gregory C. Read.

1.31 **"Disputed Claim"** shall mean any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed (whether as a separate objection to claim or in connection with an adversary proceeding) as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

1.32 **"Disputed Claims Amount"** shall mean the aggregate amount of Disputed Claims that are fixed, absolute – and neither contingent nor unliquidated. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim.

1.33 **"Effective Date"** shall mean the first Business Day on which each of the conditions specified in Article VII of the Plan has been satisfied or duly waived.

1.34 **"Estate"** shall mean the bankruptcy estate of the Debtor pursuant to section 541 of the Bankruptcy Code.

1.35 **"Estate Assets"** shall mean all property of the estate of the Debtor under section 541 of the Bankruptcy Code including, all property, assets, equitable or legal rights or interests, contract rights, benefits, causes of action, claims, or any other thing tangible or intangible, of any kind whatsoever, owned or held by or on behalf of the Debtor in which the Debtor has any right, title or interest to the full extent provided under section 541 of the Bankruptcy Code including, without limitation, Available Cash, any Retained Claims and Defenses, U.K. LLP Equity, and Avoidance Actions.

1.36 **"Exculpated Parties"** shall have the meaning assigned to it in Article 8.4 of this Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.37 **"Executory Contracts"** shall mean executory contracts and unexpired leases within the meaning of section 365 of the Bankruptcy Code.

1.38 **"Final Order"** shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

1.39 **"Former Equity Partners"** shall mean each of the individuals that held an equity interest in the Debtor, each of whom is named on **Exhibit B**, attached hereto.

1.40 **"Former Equity Partner Settlement Motion"** shall mean the *Motion for Order Approving the Compromise of a Controversy Among the Debtor and Certain Former Equity Partners of the Debtor* [Docket No. 234] that was entered into by the Debtor and Settling Former Equity Partners and approved by the Bankruptcy Court by entry of the *Order Approving Compromise of a Controversy Among the Debtor and Certain Former Equity Partners of the Debtor* [Docket No. __], or other settlement agreement between the Debtor, its estate, or the Plan Administrator and an Equity Partner that is approved by a Final Order.

1.41 **"Former Equity Partner Settlement Payments"** shall mean each payment in good funds made by a Former Equity Partner of an amount fixed by the Former Equity Partner Settlement, or other settlement agreement between the Debtor, its estate, or the Plan Administrator and an Equity Partner that is approved by a Final Order.

1.42 **"Former Settling Equity Partners"** means those Former Equity Partners that are party to the Former Equity Partner Settlement, who are listed on Exhibit C.

1.43 **"Insurance Deductible"** shall mean the amount of a Malpractice Claim that is to be reimbursed by the insured in any applicable Malpractice Policy.

1.44 **"Insured Malpractice Claim"** shall mean the insured portion of any Malpractice Claim under the applicable Malpractice Policy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.45 **"Interest Holder"** shall mean, individually, each of the Former Equity Partners set forth on **Exhibit B**, or his/her successors and assigns.

1.46 **"Interests"** shall mean any interests in the Debtor owned by, individually, each of the Former Equity Partners set forth on **Exhibit B**, or his/her successors and assigns.

1.47 **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.48 **"Liquidating Debtor"** shall mean the Debtor as reconstituted on and after the Effective Date.

1.49 **"Malpractice Policy" or "Policies"** shall mean any insurance policies issued to or providing coverage, whether before or after the Petition Date, for any of: (a) the Debtors or their predecessors; (b) any past, present, or future directors, officers, employees, agents or representatives of the Debtors or their predecessors, in each case, in their capacity as such; or (c) other beneficiaries of coverage under the terms of such policies issued to or providing coverage to any Person or other Entity referred to in to clauses (a) or (b), including any extended reporting, tail or run-off coverage and any agreements related to any such insurance policies set forth in **Exhibit D**.

1.50 **"Net Available Cash"** shall mean the aggregate amount of all Available Cash held by the Liquidating Debtors after the payment of (or appropriate reserve for) Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims and net of amounts reserved for Disputed Claims, Professional Fees and Plan Expenses.

1.51 **"Non-Settling Former Equity Partner"** shall mean any Former Equity Partner that the Debtor has claims against that have not been settled or adjudicated by a Final Order entered by the Bankruptcy Court, who are each listed on **Exhibit E**.

1.52 **"Oversight Committee"** means the members selected by the Committee that will govern and direct the actions of the Plan Administrator pursuant to the terms of this Plan.

1.53 **"Petition Date"** shall mean October 2, 2019, which is the date when the Debtor filed its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

1.54 **"Plan"** shall mean this joint chapter 11 plan of liquidation and any exhibits and schedules hereto and any documents incorporated herein by reference, as the same may from time to time be amended or modified as and to the extent permitted herein or by the Bankruptcy Code.

1.55 **"Plan Administrator"** shall mean Kyle Everett, whose curriculum vitae is set forth at **Exhibit F** hereto and who shall file a further statement setting forth his qualifications and affiliations, including a disclosure of any potential conflicts of interest, pursuant to Bankruptcy Code section 1129(a)(5)(A)(i) not less than fourteen (14) days prior than the last day to object to Confirmation.

1.56 **"Plan Expenses"** shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, (ii) the costs, expenses and legal fees incurred to investigate, litigate, estimate and settle the Retained Claims and Defenses (which shall include the Avoidance Actions), including, but not limited to, attorneys' fees, accounting fees, expert witness fees, consultants' fees, and all costs relating to obtaining and distributing such recoveries, incurred by the Liquidating Debtor, (iii) the costs and expenses of administration of the Liquidating Debtor, including without limitation the fees and costs of the Plan Administrator; (iv) amounts necessary to compensate members of the Dissolution Committee and the Debtor's Professionals after Confirmation for services rendered at the request of the Plan Administrator regarding, *inter alia*, the Debtor's dissolution or the Bankruptcy Case; (v) all costs to manage, store, transport, transfer and destroy client and administrative records, and (vi) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

1.57 **"Plan of Dissolution"** shall mean that certain Plan of Dissolution of Sedgwick, LLP that was approved by the Debtor and effective as of December 31, 2017.

1.58 **"Post-Confirmation Motion and Opportunity for Hearing"** shall mean the procedures to be utilized after the Effective Date by any party seeking approval from the Court respecting matters requiring approval under this Plan which procedures are more fully described in Article 5.30 herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.59    **"Post-Confirmation Service List"** shall mean a service list comprised of names and email addresses for all members of the Committee as of the Effective Date, the Office of the United States Trustee, and any other creditor or party in interest that files a request for post confirmation notice after the Effective Date with the Court and serves it on the Post Confirmation Service List.

1.60    **"Priority Tax Claim"** shall mean that portion of a tax Claim, if any, entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.61    **"Professional Fees"** shall mean all amounts allowed and awarded by the Bankruptcy Court for compensation for services rendered and reimbursement of expenses incurred by Professionals pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.62    **"Professionals"** shall mean those attorneys, accountants and other financial advisors employed by the Debtor (pursuant to section 327 of the Bankruptcy Code) or the Committee (pursuant to section 1103 of Bankruptcy Code) in the Chapter 11 Case and to be compensated for services rendered and reimbursed for expenses incurred pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.63    **"Pro Rata" or "Pro Rata Share"** shall mean, with respect to distributions on account of Allowed Claims, in the same ratio of an Allowed Claim in a particular Class to the aggregate of all Allowed Claims in that Class.

1.64    **"Rejected Contract(s)"** shall mean those Executory Contracts which are rejected by the Debtor pursuant to section 365 or 1123(b)(2) of the Bankruptcy Code.

1.65    **"Rejection Claim"** shall mean any Allowed Claim under Bankruptcy Code section 502(g) that arises under Bankruptcy Code section 365(g)(1) in favor of the non-debtor party to any Executory Contract that is rejected by the Debtor pursuant to Bankruptcy Code sections 365(a) or 1123(b)(2).

1.66    **"Rejection Claim Bar Date"** shall mean the last date established by the Bankruptcy Court by which entities asserting a Rejection Claim against the Debtor must have filed a proof of Claim with respect to such Rejection Claim or be forever barred from asserting such Claim and/or sharing in any distribution hereunder in respect of such Claim.  For contracts or

leases for which no rejection claim bar date was previously established, or for contracts and leases rejected pursuant to the Plan, the Rejection Claims Bar Date shall be twenty-eight (28) days following the date upon which the Confirmation Order is entered.

1.67 **"Reserved Claims"** shall mean the amounts necessary, or reserved, to pay (i) allowed chapter 11 administrative expenses, (ii) priority tax claims, (iii) allowed Claims in Class 2, or (iv) Plan Expenses.

1.68 **"Reserved Claims Pool"** shall mean the amounts that shall be funded on or after the Effective Date pursuant to Article 5.1 of this Plan for the purpose of holding as reserves the amounts of Administrative Claims (including amounts due for Professional Fees) that have not become Allowed Claims.

1.69 **"Reserved Claims Pool Account"** shall mean the bank account established by the Liquidating Debtor into which the Plan Administrator shall deposit the amounts that constitute the Reserved Claims Pool.

1.70 **"Retained Claims and Defenses"** shall mean all claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination held by the Debtor or its Estate against any party whether or not pending on the Effective Date, not otherwise released or settled before the Effective Date, including but not limited to those specifically set forth in Article IV of the Disclosure Statement.

1.71 **"Schedules"** shall mean the schedules of assets and liabilities [Docket Nos. 107 and 119] and the statement of financial affairs [Docket No. 108] filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended from time to time.

1.72 **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, or the Estate, or secured by an amount subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.73 **"Sedgwick Released Claims"** means all claims for relief, causes of action, defenses or counterclaims that the Debtor or the Estate (or any entity acting on behalf of the Debtor or the Estate) could have asserted against the Settling Former Equity Partners.

1.74 **"U.K. LLP"** means Sedgwick Detert Moran & Arnold LLP, as organized under the laws of England.

1.75 **"U.K. LLP Equity"** means the equity in the U.K. LLP that is owned by the Debtor.

1.76 **"Unliquidated Claim"** shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

1.77 **"Unsecured Claim"** shall mean any Claim that is neither secured nor entitled to priority or administrative status under sections 507 or 503, respectively, of the Bankruptcy Code.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 **Criterion of Class.** The following is a designation of Classes of Claims under the Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that (i) the Claim qualifies within the description of that Class, and is classified in a different Class to the extent that the remainder of the Claim qualifies within the description of that different Class, and (ii) the Claim, or any portion or Allowed amount of such Claim, is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. In the event of a controversy as to whether (a) any Class of Claims is impaired, or (b) any Class of Claims is properly designated, the Bankruptcy Court shall, after notice and a hearing, determine such controversy pursuant to applicable provisions of the Bankruptcy Code and Bankruptcy Rule 3013.

2.2 **Classes of Claims and Interests.** All Claims and Interests are divided into the following Classes, which Classes shall be mutually exclusive:

2.2.1 **Class 1 Claims.**

Class 1 shall consist of Insured Malpractice Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### 2.2.2 **Class 2 Claims.**

Class 2 shall consist of General Unsecured Claims.

### 2.2.3 **Class 3 Interests.**

Class 3 shall consist of the Interests held by the Interest Holders.

## ARTICLE III

## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

**3.1** **Administrative Claims.**

Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, shall be paid in full by the Liquidating Debtor from Available Cash or the Reserved Claims Pool Account (as applicable) on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Liquidating Debtor may agree.

**3.2** **Administrative Claim Bar Date.**

All requests for payment of Administrative Claims, other than Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the Liquidating Debtor or from sharing in any distribution under the Plan. Holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtor's business following the Petition Date shall not be required to comply with the Administrative Claim Bar Date, _provided that_, (i) such holders have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the Debtor in the ordinary course of business, and (ii) such Claims are not past due according to their terms.

3.3     **Claims for Professional Fees.**

Each party seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Administrative Claims Bar Date; and (b) if the Bankruptcy Court grants such an award, each such party will be paid in full in Cash by the Liquidating Debtor in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and the Bankruptcy Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

3.4     **Priority Tax Claims.**

Each Allowed Priority Tax Claim, unless the holder of such Claim has agreed to a different treatment, shall receive deferred cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the rate established by applicable nonbankruptcy law as of the calendar month in which the Plan is confirmed, or at such other rate as may be agreed upon between the Liquidating Debtor and the appropriate governmental unit, *provided that* the Liquidating Debtor may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1     **Class 1 Claims (Insured Malpractice Claims).**

Class 1 shall consist of Insured Malpractice Claims. Class 1 Claims are impaired. Each Holder of an Insured Malpractice Claim shall receive the treatment provided by the Plan for the holders of Allowed Unsecured Claims under Class 2 of the Plan. In the alternative, at the election (as defined below) of the Holder of a Class 1 Claim, such holder shall instead receive the following treatment: (a) the automatic stay under Section 362 of the Bankruptcy Code shall be deemed modified to permit the Holder of a Class 1 Claim to prosecute its claim to judgment in any applicable court of competent jurisdiction; (b) the Holder shall be deemed to waive its Class 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Claim against the Debtor and the Estate and shall not be entitled to any distribution under the Plan, (c) the Holder shall limit its recourse on account of its Class 1 Claim solely to the proceeds of any applicable Malpractice Policy; and (d) any recovery obtained by the Holder on account of its Class 1 Claim shall (i) in the event of a judgment, be deemed reduced by the amount of any Insurance Deductible applicable to such Claim under any applicable Malpractice Policy, or (ii) in the event of a settlement, be deemed to satisfy the amount of any Insurance Deductible applicable to such Claim under any applicable Malpractice Policy.  For purposes of this Section 4.1 of the Plan, an election shall mean the written acceptance submitted by the Holder of a Class 1 Claim accepting the Plan on the Ballot in connection with solicitation of votes under the Plan.

4.2     **Class 2 (General Unsecured Claims).**

Class 2 shall consist of Unsecured Claims. Class 2 Claims are impaired.  Each holder of an Allowed Class 2 Claim shall receive, a Pro Rata Share of Net Available Cash after deductions for the payment (or appropriate reserve for) the Allowed Claims of senior classes of Claims and reserves for Disputed Claims, Professional Fees and/or Plan Expenses.  To the extent that all Allowed Class 2 Claims have been paid in full, including post-petition interest, any remaining funds in the Claims Reserve Account shall be used by the Liquidating Debtor to fund distributions to the holders of Allowed Interests in Class 3.

4.3     **Class 3 (Interests).**

Class 3 consists of the Interests held by the Interest Holders.  On the Effective Date, the Interest Holders shall have no ability to direct or control the affairs of the Liquidating Debtor, but shall retain their status as partners of the Liquidating Debtor.  Interest Holders shall receive nothing under the Plan until the Allowed Claims of Class 2 is paid in full, including postpetition interest, at which point all Net Available Cash, net of amounts reserved for Disputed Claims, Professional Fees and/or Plan Expenses, shall be paid to the Interests Holders consistent with the extent of their Interests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.4 **Nonconsensual Confirmation.**

4.4.1 **Classes 1 and 2 Cramdown.**

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Claims in Classes 1 and 2.

4.4.2 **Class 3 Cramdown.**

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Interests in Class 3.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for implementation of the Plan.

5.1 **Effective Date Transactions.**

Without limiting the generality of the foregoing, and without altering or amending the terms of the Plan in any manner, on (or, where appropriate, after) the Effective Date, the following actions shall occur:

(i) The transactions contemplated under the Plan shall be consummated;

(ii) The Liquidating Debtor shall be capitalized with the Former Equity Partner Settlement Payments;

(iii) The Liquidating Debtor shall fund the Reserved Claims Pool Account with the funds necessary to establish the Reserved Claims Pool; and

(iv) The Liquidating Debtor shall reserve such funds as are necessary to fund all anticipated Plan Expenses, including without limitation any anticipated litigation costs, prior to making any distributions pursuant to this Plan;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.2    **Revesting of Estate Assets.**

Upon the Effective Date, the Liquidating Debtor shall be vested with all right, title and interest in the Estate Assets free and clear of all Claims and Liens, other than any obligations under this Plan.

5.3    **Replacement of Dissolution Committee/Continued Existence.**

Upon the Effective Date, the Plan of Dissolution shall be deemed amended to replace the Dissolution Committee with the Plan Administrator, and the Dissolution Committee shall be relieved of its responsibilities arising under the Plan of Dissolution.  The Liquidating Debtor, as represented by the Plan Administrator, shall be authorized to execute such other documents as are necessary and appropriate to carry out the provisions of this Plan, without the necessity of filing such documents with the Bankruptcy Court.  In the event the Liquidating Debtor seeks and obtains the assistance of any member of the Dissolution Committee or the Debtor's Professionals after Confirmation, regarding, *inter alia*, the Debtor's dissolution or the Bankruptcy Case, the Liquidating Debtor shall pay for such assistance at the regular hourly rates of the member of the Dissolution Committee or the Debtor's Professionals.

5.4    **Management of Liquidating Debtor by Plan Administrator.**

Subject to the oversight and consent of the Oversight Committee that is required for Plan Administrator actions or decisions that are set forth in Article 5.12, on and after the Effective Date, the Plan Administrator shall be responsible for the implementation of the Plan, including with respect to the management, control and operation of the Liquidating Debtor.  The Liquidating Debtor and its counsel will succeed to the Debtor's attorney-client privilege with the Debtor's former clients. The Plan Administrator shall be compensated on an interim basis at a blended hourly rate of $525 per hour, plus reasonable out of pocket expenses.  For time incurred prior to Confirmation in preparation for a transfer of control, the Plan Administrator may be compensated Post-Confirmation up to 40 hours of time.  The Plan Administrator may petition the Court to modify the hourly rate two years after the Effective Date.  Upon completion of all duties and concurrent with a Post Confirmation Motion and Opportunity for Hearing seeking closure of the Chapter 11 Case, the Plan Administrator shall file a Post Confirmation Motion and Opportunity for

Hearing seeking approval of all fees and expenses previously paid as compensation by the Liquidating Debtor after the Effective Date.

### 5.5     Continued Business of Liquidating Debtor.

On and after the Effective Date and upon the direction of the Plan Administrator, the Liquidating Debtor shall continue to engage in its wind-down operations and may use, acquire, dispose of and/or abandon Estate Assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules, except as set forth in this Plan.  The Liquidating Debtor will not continue or engage in the conduct of any trade or business, except to the limited extent necessary to accomplish the liquidation and distribution of the Estate Assets.

### 5.6     Retained Claims and Defenses.

Except as otherwise limited by Article 5.12, on and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Retained Claims and Defenses with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code.

#### 5.6.1     Bankruptcy Rule 2004.

In the course of any ongoing investigations, the Plan Administrator shall have the right post-confirmation to utilize Bankruptcy Rule 2004 examinations, to be enforced pursuant to Bankruptcy Rule 2005.

#### 5.6.2     Standing.

To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Plan Administrator as successor to the Debtor may continue the prosecution of such Retained Claims and Defenses.  Without limiting the foregoing, the Plan Administrator, acting on behalf of the Liquidating Debtor, shall accede to and become the holder of all rights in and to any confidentiality agreements, joint defense agreements, and privilege agreements, as well as rights pursuant to attorney-client privilege, attorney work product and any other or similar doctrine, of the Debtor and the Committee.  Any proceeds received from or on account of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Retained Claims and Defenses shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.7 **Avoidance Actions.**

On and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Avoidance Actions with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code. The Plan Administrator may investigate Avoidance Actions and may assert, settle or enforce any such claims or defenses. To the extent any Avoidance Actions are already pending on the Effective Date, the Plan Administrator as successor to the Debtor and may continue the prosecution of such Avoidance Actions. Any proceeds received from or on account of the Avoidance Actions shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.8 **Claims Reserve Account.**

On or as soon as practical following the Effective Date, the Claims Reserve Account shall be opened by the Plan Administrator and held by the Liquidating Debtor and funded by all Cash not deposited in the Reserved Claims Pool Account, which funds (minus Plan Expenses) shall be held for the benefit of holders of Claims in Classes 1 and 2. Unless otherwise provided in the Confirmation Order, the Claims Reserve Account shall be invested by the Plan Administrator in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code. All duties and obligations associated with the maintenance of the Claims Reserve Account, including but not limited to, any fees, taxes, tax reporting or filings with any governmental authority, shall be the sole responsibility of the Plan Administrator.

5.9 **Liquidating Debtor Liquidation Budget.**

Upon the Effective Date, the Plan Administrator shall exercise his business judgment and reserve the estimated amount of two (2) years' U.S. Trustee fees and may reserve additional funds post confirmation based on information available at the time in the exercise of his or her business judgment.

5.10 **Limitation of Liability of Plan Administrator and the Oversight Committee.**

The Plan Administrator, the Oversight Committee (including its members individually) and their attorneys, accountants, consultants, employees, agents and assignees, heirs, successors, and assigns, shall have no liability for any error of judgment made in good faith other than as a result of gross negligence or willful misconduct. The Plan Administrator and the Oversight Committee (including its members individually) shall not be liable for any action taken or omitted in good faith and believed by them to be authorized within the discretion or rights or powers conferred upon them by this Plan or the New Plan Documents. In performing his duties hereunder, the Plan Administrator may consult with counsel selected by him, at the expense of the Liquidating Debtor. No provisions of this Plan shall require any employee, officer or director of the Plan Administrator or the Oversight Committee (including its members individually) to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of duties under this Plan or in the exercise of any of the Plan Administrator's rights and powers. The Liquidating Debtor shall indemnify and hold the Plan Administrator and the Oversight Committee (including its members individually) harmless, from and against any damages, costs, claims and other liabilities incurred in connection with their respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from such party's gross negligence or willful misconduct. Notwithstanding the above, nothing in this paragraph shall shield a Professional employed by the Plan Administrator and/or the Oversight Committee from injuries caused by his negligence in the performance of his or her duties.

5.11 **Dissolution of Committee**

Upon the Effective Date, the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case, and the Committee shall be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents shall terminate. Following the Effective Date, the Committee's Professionals are entitled to seek payment for the reasonable and documented fees and expenses related to their services provided on or before the Effective Date as well as any reasonable fees and expenses incurred in preparing final

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

fee applications for services rendered prior to the Effective Date. The Committee elected representative to the Oversight Committee shall remain in full force and effect and shall survive the Committee's dissolution.

### 5.12 Powers of the Oversight Committee.

From and after the Effective Date, the Oversight Committee shall replace the Committee for as long as the Oversight Committee has at least one active member. Any member may resign from the Oversight Committee by serving written notice to all members of the Oversight Committee and to the Plan Administrator. Such written notice may specify the date of resignation. The Plan shall amend the existing Committee bylaws to provide: (a) in the event that there is a tie vote on a motion presented to the Oversight Committee, the motion shall be decided based on the aggregate claim amounts of the voting members, and (b) to make the minimum number of Oversight Committee members one (1). The Oversight Committee may utilize the Professionals of the Liquidating Debtor or retain their own Professionals in the Oversight Committee's discretion. The Plan Administrator shall send the Oversight Committee members monthly status reports regarding the status of the Retained Claims and Defenses and quarterly reports on the status of the Liquidating Debtor's progress administering Estate Assets. The Plan Administrator shall work with the Chair of the Oversight Committee to schedule Oversight Committee meetings as needed.

The Plan Administrator shall take direction and seek authorization from the Oversight Committee. The Oversight Committee may seek Court approval to remove the Plan Administrator if he or she fails to obtain Oversight Committee approval for one or more of the foregoing described actions and/or for cause. The Plan Administrator may only defend such a motion on the ground that (i) he or she did not take any actions that were restricted by the Plan or (ii) if the motion is made for cause, that no cause exists for removal. If the Plan Administrator is removed by the Bankruptcy Court or is no longer able or willing to complete his or her duties, the Oversight Committee shall appoint a successor Plan Administrator.

### 5.13 Material Default Under the Plan.

Failure to make any payment required to be made under the Plan by the Liquidating Debtor shall be considered a default under the Plan. If any default is not cured within 35 days after

service of written notice of such default to the Liquidating Debtor, the U.S. Trustee, any affected Creditor, or any affected party in interest asserting such default may seek to enforce its rights under the Plan.

5.14 **Payment of Plan Expenses.**

All Plan Expenses may be paid by the Liquidating Debtor.

5.15 **Distribution Procedures.**

Distributions to holders of Allowed Claims in Classes 1 through 3 shall be made as soon as practicable as determined by the business judgment of the Plan Administrator based upon the amount of funds to be distributed relative to the administrative costs of making a distribution. Because both the timing and the amount of distributions to Unsecured Creditors are dependent on the proceeds from the prosecution of the Retained Claims and Defenses and Avoidance Actions, it would be imprudent to provide an estimate as to when distributions will be made under the Plan. To the extent not accomplished previously, the Plan Administrator shall promptly move to file objections to Claims with the goal being that all objections be filed and served not later than 270 days following the Effective Date, provided that such date shall not bar later objections. Notwithstanding the preceding sentence, no distributions shall be made on account of Class 1 Claims until all objections to Claims have been filed. No payments or distributions shall be made by the Liquidating Debtor on account of Disputed Claims unless and to the extent such Claims become Allowed Claims. The funds allocated to Disputed Claims will not be distributed, but will be held in the Claims Reserve Account by the Liquidating Debtor in accordance with this Plan pending resolution of such Disputed Claims. Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Liquidating Debtor under the Plan shall be distributed in such amounts and at such times as is reasonably prudent, in the form of interim and/or final distributions, with sufficient reserves established to satisfy the reserve requirements for Disputed Unsecured Claims, Professional Fees and anticipated Plan Expenses. Unless otherwise provided in this Plan, all distributions to Creditors shall be: (i) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (ii) by first-class mail (or by other equivalent or superior means as appropriate).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.16 **Resolution of Disputed Claims**

The Plan Administrator shall promptly move to file objections to Claims that have not been previously objected to with the goal being that all objections be filed and served not later than 270 days following the Effective Date, <u>provided that</u> such date shall not bar later objections. Except as otherwise provided in the Confirmation Order, the Liquidating Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claim (including Malpractice Claims) following the Confirmation Date in accordance with the terms of the Plan, as applicable, and the Bankruptcy Court shall retain jurisdiction to hear and adjudicate the allowance or disallowance of Claims, as provided for in Article V of this Plan. Settled Claims shall be deemed to be Allowed Claims in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

5.17 **Reserve Provisions for Disputed Claims.**

The Liquidating Debtor shall implement the following procedures with respect to the allocation and distribution of Cash held in reserve for the benefit of holders of Disputed Claims that may become Allowed Claims:

(i) Cash respecting Disputed Claims shall not be distributed, but shall be withheld by the Liquidating Debtor, in an amount equal to the amount of the distributions that would otherwise be made to the holders of such Claims if such Claims had been Allowed Claims;

(ii) All holders of Allowed Claims shall be entitled to receive, if available, interim distributions under the Plan. No distributions may be made to the holders of Allowed Claims unless adequate reserves are established for the payment of Disputed Claims and sufficient funds are also reserved for expected Professional Fees and Plan Expenses;

(iii) For the purposes of effectuating the provisions of this Article V, the Bankruptcy Court may estimate the amount of any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, which provides, "There shall be estimated for the purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or (2) any right to payment arising from a right to an equitable remedy for breach of performance." The amounts so

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

fixed or liquidated by the Bankruptcy Court shall be deemed to be Allowed Claims for purposes of distribution under this Plan, or alternatively, until such time as the Claim becomes Allowed, the amount so fixed by the Bankruptcy Court shall serve as the basis to calculate the appropriate Disputed Claim reserve;

(iv)     When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash equal to the holder's Pro Rata Share of the Distributions that have previously been made on account of the Claims in the same class.  In no event shall such holder be paid more than the amount that would otherwise have been paid to such holder if the Disputed Claim (or the Allowed portion of the Disputed Claim) had not been a Disputed Claim;

(v)     Interim distributions may be made from time to time to the holders of Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims, provided that, such distributions are otherwise consistent with the terms of this Plan and the aggregate amount of Cash to be distributed at such time is practicable in comparison to the anticipated costs of such interim distributions;

(vi)     No holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.  In no event shall any holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) any payment (x) which is greater than the amount reserved for such Claim pursuant to this Article V (unless the Claim is otherwise allowed in a greater amount by the Bankruptcy Court) or (y) except as otherwise permitted under this Plan, of interest or other compensation for delays in distribution.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under these provisions of this Plan unless the loss is caused by the Plan Administrator's gross negligence or willful misconduct;

(vii)     To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claims Amount reserved for such Disputed Claim, then the resulting surplus of cash shall be made available for redistribution to other holders of Allowed

Claims of like class until such time as each holder of an Allowed Claim has been paid the Allowed amount of its Claim.

### 5.18 Allocation of Distributions.

Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 5.19 Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

### 5.20 De Minimis Distributions.

Notwithstanding any other provision of this Plan, distributions of less than $250 need not be made by the Liquidating Debtor on account of any Allowed Claim, provided that, distributions that would otherwise be made but for this provision shall carry over until the next date of a distribution until the cumulative amount to which any holder of an Allowed Claim is entitled is equal to or more than $250, at which time the cumulative amount of such distributions shall be paid to such holder.  Distributions that will not be made as of the date of a final distribution shall be treated as unclaimed distributions as provided in Article V of this Plan.

Notwithstanding any other provision of this Plan, at the point when the remaining funds in the Claims Reserve Account consist of an amount impracticable to distribute, the Liquidating Debtor may donate (or authorize the Plan Administrator to donate) such Cash to a nonprofit organization or organizations in this judicial district that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code).

### 5.21 Disputed Payments.

In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Liquidating Debtor may, in lieu of making such payment or distribution to such entity, instead hold

such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

5.22    **Unclaimed Property.**

Creditors have the obligation to file change of address forms with the Court and to serve such changes of address on the Plan Administrator and his counsel.  If a Claimant fails for the second consecutive time to claim any Cash within 90 days from the date upon which a distribution is made, such Claimant shall be subject to having its claim excluded from future distributions.  The Plan Administrator shall file an omnibus Post Confirmation Motion and Opportunity for Hearing seeking to exclude such Claimants from future distributions and shall serve such Claimants at the address on Claimants proof of claim, if any, on the address scheduled by the Debtor for such Claimants, on any addresses supplied by Claimants in any and all change of address filings filed with the Court, and if available on any agents for service of process addresses that are available from the California Secretary of State and any other states in which the Debtor did business (but only to the extent that such agents for service of process are available from the Secretary of State's web sites without charge).  Upon Court approval of the subject Claimants' forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to other holders of Allowed Claims of like Class.  Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Debtor or the Plan Administrator, as applicable, or any holder of an Allowed Claim to whom distributions are made under this Plan, provided, however, that the Plan Administrator may but is not required to undertake reasonable efforts, in his business judgment, to locate creditors whose distributions are returned.

5.23    **Malpractice Policies Remain In Force**

All Malpractice Policies shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Malpractice Policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

### 5.24 Successor Plan Administrator.

If the Plan Administrator resigns, dies, is removed by the Oversight Committee pursuant to Article V of the Plan, or is otherwise unable or unwilling to perform his or her duties under this Plan, the Oversight Committee shall name the successor Plan Administrator. If the Oversight Committee no longer exists, the successor Plan Administrator shall be selected by the Creditor holding the largest undisputed Allowed Claim, after consultation with parties in interest, including Unsecured Creditors or their successors, as appropriate.

### 5.25 Setoffs.

Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment that the Debtor or the Liquidating Debtor may have against any Creditor or Interest Holder.

### 5.26 No Distributions on Late-Filed Claims.

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date shall be a Disallowed Claim, and no distribution shall be made to a holder of such a Claim, provided that, to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated), such Claim shall be treated as an Allowed Claim in the amount in which it was so listed.

### 5.27 Withholding Taxes.

Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtor shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. The Liquidating Debtor shall comply with all reporting obligations imposed on it by any governmental unit.

### 5.28 Post-Effective Date Reports.

Following the Effective Date, the Liquidating Debtor shall prepare and submit to the Bankruptcy Court and the Office of the United States Trustee, post-confirmation reports for a revested debtor in the form suggested by the Office of the United States Trustee for Region 17. The first post-confirmation report shall be due within thirty (30) days following the end of the first calendar quarter from the Effective Date and shall be filed on a quarterly basis thereafter within

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

thirty (30) days after the end of each quarter, unless otherwise agreed by the Liquidating Debtor and the Office of the United States Trustee. Twice yearly, the Plan Administrator shall also provide oral reports to Claimants to be held at a convenient location in San Francisco (the "Plan Administrator Meetings with Claimants"), or by conference call. Claimants can participate in the Plan Administrator Meetings with Claimants by executing a disclosure of potential conflicts form, and a confidentiality and common interest agreement and returning it to the Plan Administrator or his Counsel at or prior to the commencement of any meeting. The Plan Administrator in the exercise of his business judgment may exclude any Claimant who presents a conflict that makes participation in such meeting inappropriate from any relevant portion of such meeting. The Plan Administrator shall serve on all members of the Post Confirmation Service List a notice of each meeting at least thirty days prior to each Plan Administrator Meetings with Claimants. Claimants that elect to participate in these meetings, shall have no fiduciary duty to any other Claimant to act on or respond to any information provided by the Plan Administrator at the meetings, and shall have no liability to any Claimant or party for any opinions expressed by a Claimant at any Plan Administrator Meetings with Claimants.

### 5.29    Post-Effective Date Employment and Compensation of Professionals.

After the Effective Date, the Plan Administrator may retain any existing Professionals of the Committee or the Debtor without further employment agreements or orders. Additionally, after the Effective Date, the Plan Administrator may hire other professionals without the requirement that such professionals file employment applications for Bankruptcy Court approval of their employment, whether on an hourly, contingency fee or other basis, and without requirement that such professionals file applications for payment of post-Effective Date fees and expenses on an interim basis.

### 5.30    Final Decree.

Upon substantial consummation of the Plan, the Plan Administrator shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 case pursuant to section 350 of the Bankruptcy Code. Concurrently with the motion for entry of final decree, the Plan

Administrator shall also file a report with the Court and the Office of the United States Trustee that sets forth the distributions made by the Liquidating Debtor pursuant to the Plan.

**5.31 Procedures for Post-Confirmation Motion and Opportunity for Hearing.**

A Post-Confirmation Motion and Opportunity for Hearing shall be served on the Post-Confirmation Service List and shall: (i) detail the requested relief; (ii) provide evidentiary support; and (iii) give any and all parties in interest fourteen (14) calendar days to file written opposition with the Court and to request a hearing. If no opposition is filed, the Court may act on the Post Confirmation Motion and Opportunity for Hearing without hearing.

**ARTICLE VI**

**EXECUTORY CONTRACTS**

**6.1 Executory Contracts.**

**6.1.1 Assumption.**

Upon the Effective Date, the Debtor will reject each and all of its Executory Contracts except for any Assumed Contracts identified on **Exhibit A**, which shall be assumed. The Debtor reserves the right to make additions to **Exhibit A** up to 14 days prior to the date on which objections must be filed to the Plan with respect to the Confirmation Hearing. The Liquidating Debtor shall be responsible for all Cure Obligations with respect to the Assumed Contracts as set forth in **Exhibit A** or as determined by the Bankruptcy Court.

**6.1.2 Rejection.**

Nothing contained herein shall constitute a waiver by the Debtor or the Liquidating Debtor of the right to contend that some or all of a Rejected Contract is not executory, or that it was not terminated earlier by agreement or operation of law. Any Rejection Claim arising from the rejection of an Executory Contract pursuant to the Plan shall be filed within thirty-five (35) days of entry of the Confirmation Order, provided that such deadline is not applicable to any Executory Contract rejected prior to the Effective Date and for which a different Rejection Claim Bar Date was previously fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3002(c)(4). The notice of entry of the Confirmation Order shall provide the Rejection Claim Bar Date for agreements rejected pursuant to the Plan. Any Rejection Claim not filed by the applicable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Rejection Claims Bar Date shall be a Disallowed Claim and shall be forever barred as a Claim against the Debtor, the Liquidating Debtor, or any property of the Debtor and from sharing in any distribution under this Plan.

6.2     **Satisfaction of Cure Obligations.**

The Liquidating Debtor shall satisfy any Cure Obligations for the Assumed Contracts by making a Cash payment equal to the lesser of the amount: (a) set forth on Exhibit A hereto, (b) set forth in any other notice, motion or supplement to the Plan filed and served in connection with the Confirmation Hearing or as may be determined in an Assumption and Cure Order, or (c) agreed to in writing between the Liquidating Debtor and the non-debtor parties to such contracts or leases. The Debtor has attached a schedule of proposed Cure Obligations to the Disclosure Statement approved by the Court pursuant to section 1125 of the Bankruptcy Code. Objections, if any, to the Cure Obligations must be filed fourteen (14) days prior to the Confirmation Hearing. The Liquidating Debtor shall satisfy the Cure Obligations within fourteen (14) days from the date from which an Assumed Contract is assumed pursuant to section 365(b) of the Bankruptcy Code.

6.3     **Post-Petition Executory Contracts and Unexpired Leases.**

Except as may be provided otherwise by the Confirmation Order, all agreements and stipulations entered into by the Debtor on or after the Petition Date, and all Executory Contracts previously assumed by the Debtor on or after the Petition Date, shall remain in full force and effect following Confirmation to the extent and in the manner set forth in such agreements, stipulations and Assumed Contracts or leases, in each case as approved and authorized by the Bankruptcy Court, and as the same may have been amended, modified or transferred.

6.4     **Order Authorizing Assumption or Rejection.**

The Confirmation Order (or if set forth in a separate order from the Confirmation Order, the Assumption and Cure Order applicable to such Assumed Contract) shall constitute an order of the Bankruptcy Court approving (effective only upon the occurrence of the Effective Date) the assumption or rejection, as the case may be, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code of all Executory Contracts under this Article of the Plan. The contracts and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

leases under this Article VI will be assumed or rejected, respectively, only to the extent that any such contracts or leases constitute Executory Contracts.

## ARTICLE VII

## CONDITIONS PRECEDENT

### 7.1     Conditions to Confirmation.

Confirmation of this Plan is conditioned upon the entry of an order confirming the Plan which shall, among other things, (1) decree that the Plan and the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Effective Date that are inconsistent therewith; (2) authorize the implementation of the Plan in accordance with its terms; (3) contain findings supported by evidence adduced at the Confirmation Hearing that upon the occurrence of the Effective Date, that the Plan is proposed in good faith, that all actions contemplated by the Plan necessary to implement the restructuring contemplated by the Plan are authorized by all corporate action; (4) issue the injunction set forth in the Plan, effective as of the Effective Date; (5) decree that on the Effective Date, the revesting of assets in the Debtor contemplated by the Plan is or will be legal, valid and effective, and vest or will vest in the Liquidating Debtor good and marketable title to such property free and clear of all Liens, Claims, and Interests except as provided in the Plan; and (6) confirm the Plan and authorize implementation in accordance with its terms.  If any of the foregoing terms and conditions is not met, the Debtor may, at its option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

### 7.2     Conditions to Effective Date.

At any time after the Confirmation Order is entered (and provided no stay is then in effect), the Debtor shall have the power and authority to cause the Plan to become effective, and the Effective Date shall occur upon the closing of the transactions contemplated herein.

## ARTICLE VIII

## EFFECTS OF CONFIRMATION

### 8.1     Binding Effect of Plan.

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Debtor, the Committee, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

has filed a proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be as fixed and adjusted pursuant to this Plan.

8.2 **Revesting of Property Free and Clear.**

Upon the Effective Date, title to all Estate Assets shall vest in the Liquidating Debtor for the purposes contemplated under the Plan. All Unsecured Claims against the Debtor or the Estate shall be of no further force or effect except with respect to the rights of holders of Allowed Claims to received payments or distributions as set forth herein. Following the Effective Date, the Liquidating Debtor may use, acquire or dispose of any such property free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order. Except as otherwise expressly provided in the Plan or Confirmation Order, all rights or causes of action are hereby preserved and retained for enforcement solely and exclusively by and at the discretion of the Liquidating Debtor.

8.3 **Injunction.**

On the Effective Date, and except as otherwise provided by the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Debtor's estate that arose prior to the Effective Date are permanently enjoined from taking legal action against the Debtor or the Liquidating Debtor for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any Claim or demand against the Debtor or the Liquidating Debtor.

8.4 **Limitation of Liability.**

The Debtor, the Liquidating Debtor, the Dissolution Committee and each of its members, and the Committee and each of its members, and their respective officers, directors, managers, employees, agents, and representatives (collectively, the "**Exculpated Parties**"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case, the investigations of potential claims or the

formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case, *provided that*, this limitation will not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan, nor shall the foregoing exonerate any of the Exculpated Parties from any liability that results from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct.  In addition, notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any act or omission from and after the Petition Date in connection with, relating to or arising out of the Chapter 11 Case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for:  (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. The Exculpated Parties do not include any Professionals.

## ARTICLE IX

## **RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(i)     To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(ii)     To administer or enforce the Plan;

(iii)     To liquidate any Disputed Claims;

(iv)     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

(v)     To hear and determine any and all motions for the rejection of Executory Contracts and to fix and allow any Claims arising therefrom;

(vi)     To hear and determine any and all applications by Professionals for an award of pre-Effective Date Professional Fees.

(vii)     To interpret and/or enforce the provisions of the Plan, and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan, or any other agreement, document or instrument contemplated by the Plan, including, without limitation, and claims asserted against the Plan Administrator or against any professionals engaged by him or claims asserted against the Committee, the Dissolution Committee and either of their members and/or professionals;

(viii)     To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

(ix)     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(x)     To approve applications for Bankruptcy Rule 2004 Examinations and any enforcement orders necessary, including but not limited to pursuant to Bankruptcy Rule 2005;

(xi)     To approve any compromise and settlements and/or abandonments of claims against third parties, and/or the abandonment of any Asset of the Estate, which either the Plan Administrator in his sole discretion believes should be noticed to creditors, or which is the subject of an objection by the Committee;

(xii)     To approve any sales of assets or claims pursuant to section 363 of the Bankruptcy Code, which the Plan Administrator in his sole discretion believes should be noticed to creditors;

(xiii) To approve interim and/or final distributions to creditors, including the approval of any publication notices, which the Plan Administrator in his sole discretion believes should be noticed to creditors;

(xiv) To issue an injunction or injunctions post-confirmation pursuant to Bankruptcy Code section 105 upon a proper showing; and

(xv) To close the Chapter 11 Case when administration of the case has been completed.

## ARTICLE X

## MISCELLANEOUS

10.1 **Severability of Plan Provisions.**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.2 **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

10.3 **Headings.**

The headings contained in this Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.4   **Language Interpretation.**

In the interpretation of this Plan, unless the context otherwise requires, references in this Plan to the singular shall be construed to include references to the plural and vice versa; words importing the singular shall be deemed to import the plural and vice versa; words denoting gender shall include all genders; references to sections, schedules, and exhibits shall mean sections, schedules, and exhibits of and to this Plan; references to part includes the whole, except where the context clearly requires otherwise "or" has the inclusive meaning represented by the phrase "and/or," and the words "hereof," "herein," "hereunder," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan.

10.5   **Exhibits.**

All exhibits attached to this Plan or the Disclosure Statement are, by this reference, hereby incorporated into the Plan.  The final version of all exhibits to the Plan and the Disclosure Statement will be substantially in the forms attached hereto or thereto.  The Proponents reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing.  If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

10.6   **Exemption from Transfer Taxes:**

The Debtor and the Liquidating Debtor shall have all the rights and benefits granted pursuant to Bankruptcy Code section 1146(a) under this Plan.

10.7   **Notices.**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

If to the Debtor:

Sedgwick LLP (in dissolution)
2646 Dupont Drive, Suite 60 #503
Irvine, CA 92612
Attn:  Curtis D. Parvin

With a copy to:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Attention: John W. Lucas

If to Plan Administrator

Kyle Everett
Development Specialists, Inc.
150 Post Street, Suite 400
San Francisco, CA 94108
Tel: 415.981.2717
Fax: 415.981.2718

If to the Oversight Committee:

TBD

## 10.8    Computation of Time Periods.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

## 10.9    Defects, Omissions and Amendments.

The Proponents, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, may correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code.

## 10.10    Filing of Additional Documents.

The Proponents shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Case: 18-31087   Doc# 245   Filed: 06/17/19   Entered: 06/17/19 13:51:42   Page 44 of 53
DOCS_SF:101082.2 77900/002                                              PLAN OF LIQUIDATION

38

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.11 **Successors and Assigns.**

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

10.12 **Implementation.**

Upon Confirmation, the Debtor and the Committee shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

10.13 **Certain Actions.**

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor or the Liquidating Debtor is chartered, organized or incorporated, without any requirement of further action by the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor.

10.14 **Waiver of Fourteen (14) Day Stay.**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

Dated: June 17, 2019                     PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ John W. Lucas*
_____
John W. Lucas

Attorneys for Sedgwick, LLP

**Exhibit A**

**Assumed Contracts**

**None.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# Exhibit B

## Former Equity Partners

Abadin, Ramon A.
Anscombe, Anthony J.
Barnes, Craig S.
Bernstein, Michael H.
Blancett, John W.
Boos, Nicholas
Brown, James S.
Brown, Jr., Eugene
Campillo, Ralph A.
Celebrezze, Bruce D.
Cook, Kimberly A.
Cosgrove, Phillip R.
Davisson, Michael R.
Di Saia, Steven D.
Diwik, James P.
Eassa, Robert
Elsbree, Eugene V.
Fox, Michael L.
Glen, Alan M.
Gough, Gayle L.
Guirgis, Ralph A.
Healy, Michael F.
Helfing, Robert F.
Hermann, II, Richard P.
Holmes, James J.
Humiston, David M.
Imre, Christina
Karos, Maria K.
Kendall, Mark A.
Klein, Lawrence
Klinger, Marilyn S.
Kum, Robert
Marks, Christopher S.
McMahan, Troy D.
Mesher, Barry N.
Mikacich, Amee A.
Mroz, Scott D.
O'Leary, Martin J.
Parvin, Curtis D.
Pipkin, Mike F.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| |
|---|
| Port, Andrew I. |
| Potente, Alexander E. |
| Riehle, Paul J. |
| Roland, Steven D. |
| Scheiner, Eric C. |
| Sheridan, Stephanie A. |
| Shimko, Anna C. |
| Smerdon, Edward G. |
| Smick, Joseph M. |
| Smith, Fred A. |
| Stenfeldt, Lillian G. |
| Stephens, John F. |
| Sugayan, Catalina J. |
| Sullivan, Susan K. |
| Towey, Robert D. |
| Wallace, Richard E. |
| Wasserman, Steven D. |
| Woodward, Karen E. |
| Cauley, E. Paul Jr. |
| Keale, James, II |
| Mason, Wayne B. |
| McCall, George |
| Rambin, W. Neil |
| Robertson, Thomas D. |
| Tanenbaum, Michael A. |
| Vickery, Alan R. |

**Exhibit C**

**Former Settling Equity Partner**

Abadin, Ramon A.
Anscombe, Anthony J.
Barnes, Craig S.
Bernstein, Michael H.
Blancett, John W.
Brown, James S.
Brown, Jr., Eugene
Campillo, Ralph A.
Celebrezze, Bruce D.
Cook, Kimberly A.
Cosgrove, Phillip R.
Davisson, Michael R.
Di Saia, Steven D.
Elsbree, Eugene V.
Fox, Michael L.
Glen, Alan M.
Gough, Gayle L.
Guirgis, Ralph A.
Healy, Michael F.
Hermann, II, Richard P.
Holmes, James J.
Karos, Maria K.
Kendall, Mark A.
Klein, Lawrence
Klinger, Marilyn S.
Kum, Robert
Mesher, Barry N.
Mikacich, Amee A.
Mroz, Scott D.
O'Leary, Martin J.
Parvin, Curtis D.
Port, Andrew I.
Potente, Alexander E.
Roland, Steven D.
Scheiner, Eric C.
Sheridan, Stephanie A.
Shimko, Anna C.
Smerdon, Edward G.
Stenfeldt, Lillian G.
Sugayan, Catalina J.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| |
|---|
| Sullivan, Susan K. |
| Towey, Robert D. |
| Wallace, Richard E. |
| Wasserman, Steven D. |
| Woodward, Karen E. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit D**

**Malpractice Policies**

**To be attached.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**Exhibit E**

**Non-Settling Former Equity Partners**

| |
|---|
| Boos, Nicholas |
| Diwik, James P. |
| Eassa, Robert |
| Helfing, Robert F. |
| Humiston, David M. |
| Imre, Christina |
| Marks, Christopher S. |
| McMahan, Troy D. |
| Pipkin, Mike F. |
| Riehle, Paul J. |
| Smick, Joseph M. |
| Smith, Fred A. |
| Stephens, John F. |
| Cauley, E. Paul Jr. |
| Keale, James, II |
| Mason, Wayne B. |
| McCall, George |
| Rambin, W. Neil |
| Robertson, Thomas D. |
| Tanenbaum, Michael A. |
| Vickery, Alan R. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit F**

**Plan Administrator Curriculum Vitae**

**To be attached.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA